## STATE *EX REL.* CANADAY v. BLACK.

1. SHERIFF—MANDAMUS.—Where a warrant is issued by two trial justices directed to a sheriff, requiring him to put a party into possession of premises under section 1817 of General Statutes, the sheriff cannot inquire into the regularity of the proceedings. It is his plain ministerial duty to obey the warrant, and a writ of mandamus is the proper remedy in case of his refusal.

2. CERTIORARI—CHAMBERS—STATUTES.—Has a Circuit Judge jurisdiction at his chambers to grant a writ of certiorari? Where certain words are added to a section of the General Statutes, and afterwards an act adds other words to this same section, and further declares, "so that said section when so amended shall read as follows," and leaves out the amendment of the prior act, are the words of the prior amendment repealed?

3. IBID.—IBID.—CIRCUIT JUDGE.—If a Circuit Judge has the power to issue a writ of certiorari at chambers, he can only exercise such power in the same manner as when the court is sitting, and therefore he cannot exercise it as to causes in a Circuit other than that in which he is at the time, the proper Circuit Judge being then on active duty on such other Circuit.

4. CERTIORARI—CIRCUIT JUDGE.—A writ of certiorari cannot be granted under section 402, ¶ 3, of the Code, by a Circuit Judge out of the Circuit where the proceeding lies, because, even if an order, it cannot be made without notice, and must be by *the* judge of the court having jurisdiction of the case.

5. VOID PROCEEDINGS—MANDAMUS.—A writ of certiorari, void for want of jurisdiction, affords no excuse to a sheriff for refusing to execute a warrant duly issued to him by two trial justices; and mandamus will issue.

6. IBID.—IBID.—Even if proceedings under this writ of certiorari could be regarded as such other adequate pending remedy as would defeat an application for mandamus, no such proceedings are pending, the same being null and void.

The opinion states the case.

*Mr. A. S. Farrow*, for petitioner.

*Messrs. C. C. Tracy* and *W. E. Klein*, contra.

June 17, 1891.    The opinion of the court was delivered by

MR. JUSTICE MCIVER.    This was a petition addressed to this court in the exercise of its original jurisdiction, for the purpose of obtaining a writ of mandamus directing the respondent "to forthwith put your petitioner into possession of the lands hereinbefore mentioned and described."

In the petition, which was verified, it is alleged that the petitioner is the owner of and entitled to the immediate possession of a certain tract of land situate in the County of Colleton, particularly described therein.    2. That on the 11th of October, 1890, he made an affidavit (a copy of which is filed with the petition as an exhibit) before a trial justice of said county, that one Philip Loyd was in possession of the said premises as a tenant, and though his lease had expired, had refused to surrender possession to the petitioner.    3. That the said trial justice, together with another trial justice of said county, took the necessary proceedings (copies of which accompany the petition as exhibits) under section 1817 of the General Statutes to eject the said Philip Loyd, and one James Sanders, who, it was alleged, was also in possession under the said Philip Loyd, and by his consent.    4. That as the result of such proceedings, and in conformity with the verdict of the jury, the said trial justices issued their warrant addressed to the said Robert Black, as sheriff of Colleton County, commanding him "forthwith to deliver to the said J. L. Canaday full possession of the premises as hereinafter described, and to levy expenses incurred of the goods and chattels of Mrs. L. C. Campbell."    A copy of this warrant, containing a description of the

premises, is likewise filed as an exhibit with the petition.    5. That the respondent, Robert Black, has refused to execute the warrant of the said trial justices requiring him to deliver possession of the said premises to the petitioner, basing his refusal upon an order, set out in the petition, granted by his honor, Judge Izlar, Judge of the First Judicial Circuit, at his chambers in Mt. Pleasant, in Berkeley County, a county which is not embraced within the limits of the Second Circuit, wherein the land in question is situate, and wherein the cause of action arose.    6. That this order was based upon an *ex parte* unverified petition, presented by the said James Sanders (a copy of which is filed as an exhibit), praying that a writ of certiorari might be issued, directed to the said trial justices, requiring them to certify their proceedings to the next term of the Circuit Court for Colleton County, and that in the meantime further proceedings in said cause be stayed; and that upon this petition Judge Izlar, without notice to the relator, endorsed the following order : "On filing and reading the foregoing petition, and on application of W. E. Klein, attorney for petitioner, I allow the writ of certiorari herein prayed for, and order that all further proceedings in said action be stayed." 7. Relator submits that, inasmuch as his honor, Judge Aldrich, Judge of the Second Circuit, was then in said Circuit, holding court therein, his honor, Judge Izlar, had no jurisdiction to grant the order allowing the writ of certiorari and staying the proceedings.    It will be noted that in stating the substance of this petition, we have not followed the numbering of the paragraphs as found in the petition ; and this statement is made simply to avoid confusion or misapprehension.

Upon hearing this petition, the usual rule to show cause was issued, to which the respondent has made return, in which, while not controverting any of the facts stated in the petition, he states additional facts, which are not traversed by the relator, to wit: that on the 1st of November, 1890, the order of Judge Izlar "came up for a hearing before his honor, Judge Aldrich, at Walterboro, when the return of the said trial justices was read, and objection to the authority of Judge Izlar was then made as to his right to grant the same ; that such hearing was postponed, and, owing to the indisposition of Judge Aldrich, was not heard dur-

ing the October term of court for Colleton County, and the cause was continued;" and files as exhibits copies of said return, &c. Respondent submits "that it is not his plain ministerial duty to obey an order of ejectment, unless the same be regular in form and directed solely against the parties to the proceeding; and unless the same issue from a court of record or other competent authority," and that it is not his plain ministerial duty to disobey the order of a Circuit Judge, regular on its face.

The first ground relied upon by the respondent clearly cannot be sustained. It is conceded that the proceeding which culminated in the warrant, was instituted under section 1817, of the General Statutes, and that section expressly declares that "if upon hearing the case the jury shall be satisfied that the complainant is entitled to the premises in question, they shall so find; whereof the justices shall make a record, and shall thereupon issue their warrant, directed to the sheriff of the county wherein the lands are situated, commanding him forthwith to deliver to such lessee, his heirs or assigns, full possession of the premises, and to levy all expenses incurred of the goods and chattels of the lessee, or the person in possession as aforesaid." Here was a plain ministerial duty imposed upon the sheriff, which he was bound to perform. He had no authority to inquire into the regularity of the proceedings before the trial justices, or whether they had committed any errors in performing the duties required of them by the statute. Whether all the proper parties had been made was not for him to inquire about. His duty was simply to execute the warrant as it came to him. See *Bragg* v. *Thompson*, 19 S. C., 576; *Goodgion* v. *Gilreath*, 32 *Id.*, 391; *Rogers* v. *Marlboro County*, 32 *Id.*, 561. If the trial justices committed any errors of law, either in the institution or conduct of the proceedings, the law affords a remedy for the correction of such errors; but it is not to be found in the refusal of the sheriff to execute the warrant. If, for example, the trial justices improperly incorporated in the warrant a mandate to levy the expenses out of the property of Mrs. Campbell (as to which, however, we adjudge nothing, as she is not a party to this case), she will have her remedy if the sheriff undertakes to make such levy. But that matter is not before us, as the only

question presented for our decision is whether the relator is entitled to a writ of mandamus requiring the respondent forthwith to deliver possession of the premises to the petitioner.

The only real question in the case is whether the second ground, upon which the respondent bases his refusal, to wit, the order of Judge Izlar, can be sustained. There can be no doubt that if Judge Izlar had jurisdiction to grant such order, this would afford ample excuse to the respondent for refusing to obey the mandate of the trial justices. But if, on the other hand, he had no such jurisdiction, then it is obvious that the order is a nullity, and affords no excuse whatever to respondent. If the order was a nullity, then it is the same legally as if no such order had ever been signed, in which case respondent would stand without any excuse whatever for refusing to obey the mandate of the trial justices, and the appropriate remedy would be by mandamus. The vital question, then, is whether Judge Izlar had any jurisdiction to grant the order in question. His jurisdiction is assailed upon two grounds: 1st. Because the order was granted at chambers. 2nd. Because it was in a cause arising in the Second Circuit, and only triable there by the Judge of the First Circuit while holding the courts of that Circuit, the resident Judge of the Second Circuit being at the time in the Second Circuit and engaged in holding the courts of that Circuit.

1st. There can be no doubt, since the case of *State* v. *Senft* (2 Hill, 370), that the writ of certiorari at common law could only be granted in open court in term time, and hence if the writ can be granted by a judge at chambers, the power must be derived either from the constitution or from some statute. It is very obvious that this power is not conferred upon a judge at chambers by any provision of the constitution, and hence it must be looked for in some statute. Section 2115 of the General Statutes, the object of which seems to have been to confer upon the Circuit Judges at chambers the power to grant certain specified writs and to hear certain cases therein mentioned, as it was originally adopted did not mention writs of certiorari as one of the writs which might be granted at chambers; but at the very next session of the general assembly, the act of 21st December,

1882, (18 Stat., 38) was passed, manifestly for the purpose of sup-
plying this omission, for the amendment was simply that the sec-
tion be amended so as to read as follows—repeating the language
*in totidem verbis,* of the section as originally adopted, with the
single addition of writs of certiorari to the writs named in the sec-
tion as it originally read. So that it is plain that the sole object of
the act of 1882, above cited, was to confer upon a Circuit Judge
at chambers the power to grant writs of certiorari, as well as
writs of prohibition and mandamus, mentioned in the section as
originally adopted.

As long as the statute law remained in this condition, there
could be no doubt as to the power of a Circuit Judge at cham-
bers, in a proper case, to grant a writ of certiorari. But by the
act of 1887 (19 Stat., 812), section 2115 of the General Stat-
utes was again amended, and the form of this amendment gives
rise to the difficulty in this case. For the legislature, doubtless
overlooking the fact that the section had been previously amend-
ed by the act of 1882, so as to insert therein writs of certiorari,
after specifying the amendments then proposed to be made, used
these words : "So that said section, when so amended, shall read
as follows :" repeating the language of the section as it originally
appeared in the General Statutes, with such additions as were
then made, but omitting the addition of writs of certiorari made
by the act of 1882. The result is that if the section is read as
it appears in the act of 1887, it contains no provision conferring
upon a judge at chambers the power to grant writs of certiorari.
From this it is argued by counsel for relator, with much force
and ingenuity, that the practical effect is that the provision of
section 2115, as declared by the act of 1882, giving this power
to judges at chambers, has been repealed. This presents a grave
and important question, which, as it is not necessary to the deter-
mination of the present case, we do not propose to decide in the
present condition of the court, but think it should be reserved
for the consideration of a full bench. There may be, and doubt-
less are, other instances of a like kind, some of which may be
far more important than the present. We will, therefore, with-
out deciding the question, simply throw out some suggestions
which have occurred to us. While we do not doubt that this

omission was a clear oversight upon the part of the legislature in 1887, yet it is a very delicate and perhaps dangerous thing for the court to undertake to supply what it supposes to be omissions on the part of the legislature, and we have no disposition whatever to usurp the functions of another department of the government. It may be, however, that where the supposed omission does not rest upon conjecture merely, but may be implied from the language used by the legislature itself, that a court would be warranted in supplying an omission which the language used by the legislature shows was unintentional. Authority for this may be found in Endlich on Interpretation of Statutes, sections 39, 203, 298, 317. In this case the language used by the legislature in the act of 1887, might possibly be regarded as negativing any attempt to repeal or drop that provision in section 2115, as amended by the act of 1882, conferring the power in question ; for it does not, as in the act of 1882, simply declare that the section shall be amended so as to read as follows ; but it first declares what amendments are intended to be made by the insertion of certain words in the places specified, none of which indicate any intention to drop the provision previously inserted as to writs of certiorari, and then proceeds as follows : "So that said section, when *so* amended, shall read as follows :" giving the language originally used in the section which did not contain the provision in regard to writs of certiorari. It may, therefore, be possible that the proper construction, as derived from the language used in the act of 1887, is that the purpose of the legislature was to make no other alteration in the section, *as it then read*, except those specially indicated. But, as we have said, we do not propose now to *decide* this question.

We come, to the consideration of the second ground of objection to the jurisdiction of Judge Izlar to grant the order in question. Assuming, for the purposes of this case only, that a Circuit Judge has, at chambers, the power to grant a writ of certiorari, it seems clear, from the express terms of the section claimed to confer the power, that he can only exercise such power "in the same manner in every respect as if the court was actually sitting." In other words, that a judge at chambers has the same power—no less and no more—than the

court itself would have if it were sitting at the time. So that the practical question is whether the Court of Common Pleas, while sitting in the First Circuit, would have the power to grant the writ of certiorari, in a case arising in another Circuit and there triable. Upon this question we do not see how there can be two opinions. It seems to us that sections 13 and 14 of article IV. of the Constitution, read in connection with sections 2116 and 2117 of the General Statutes, together with the case of *Ex parte Parker* (6 S. C., 472), point to but one conclusion, and that is, that the Court of Common Pleas while sitting in one Circuit has no jurisdiction over a case pending in another Circuit. It follows, therefore, that even if section 2115 of the General Statutes can be regarded as conferring the power upon a Circuit Judge at chambers to grant a writ of certiorari, yet Judge Izlar had no jurisdiction to grant the order under the provisions of that section.

Nor can his power to do so be derived from subdivision (3) of section 402 of the Code of Procedure, which reads as follows:

"Orders made out of court without notice may be made by the judge of the court in any part of the State." In the first place, it is more than doubtful whether this provision has any application to the granting of a writ of certiorari, which cannot be regarded as an *order*, but is rather in the nature of a judgment. But, in addition to this, that provision only applies to an order made "*without notice*," which, of course, means an order which can *properly* be made without notice. Now, inasmuch as the Code makes no provision in regard to proceedings to obtain a writ of certiorari, and does provide, in section 449, that where that is the case, "the practice heretofore in use may be adopted, so far as necessary to prevent a failure of justice," and inasmuch as it was settled by the case of *State* v. *Senft*, 2 Hill, 370, *supra*, that "the writ can in no case be granted only on cause shown," it seems clear that an application for a writ of certiorari does not fall within the provisions of subdivision (3) of section 402 of the Code. Again, that section only permits an order without notice to be made—not by *a* judge of the court— but the language is, "by *the* judge of the court," which plainly

implies *the* judge of the court having jurisdiction of the case in which the order is applied for.

We have not deemed it necessary to make any reference to those special statutory provisions which permit a judge of one Circuit to grant certain orders in cases pending in another Circuit, where the judge of such Circuit is absent or unable to act; for it is conceded here that the judge of the Second Circuit was actually holding court in that Circuit when the order in question was granted by Judge Izlar. Consequently those provisions having no application to the case as presented here, have not been considered. We must therefore conclude that the order of Judge Izlar, granting the writ of certiorari and staying proceedings in the case, was a mere nullity, he having no jurisdiction in the matter; and consequently such order affords no excuse for the refusal of respondent to execute the warrant of the said trial justices.

It is argued, however, by respondent's counsel, that the relator is not entitled to the writ of mandamus prayed for, because he has another plain and adequate remedy; and if this be so, then, of course, the application for mandamus should be refused. We must therefore consider next whether the relator has another plain and adequate remedy. The only one suggested is under the proceedings in certiorari now alleged to be pending before Judge Aldrich. Without stopping to inquire whether such proceedings would afford to the relator such a plain and adequate remedy as would defeat his right to mandamus, it is sufficient to say that, having determined that those proceedings are based upon an alleged order which is a mere nullity, it cannot be properly said that any such proceedings are now pending. The foundation being taken away, the superstructure must fall. We think, therefore, that the relator is entitled to the writ of mandamus as prayed for.

The judgment of this court is, that a writ of mandamus do forthwith issue out of and under the seal of this court, directed to the respondent, Robert Black, as sheriff of Colleton County, requiring him forthwith to deliver to the petitioner full possession of the premises described in the petition.