## John Fleming and Others vs. Merrill I. Mills and Others.

Where a merchant sells goods to a customer at a distance, and contracts to ship them, at a specified time, by a designated route, but, instead of doing so, sends or knowingly permits them to go forward by any other route, it is at his own risk of loss or unseasonable delivery.

The agent of the O. & P. R. R. Co., on receipt of goods to be forwarded, gave a dray ticket, signed by himself, in the following form: "Pittsburgh, Nov. 1, 1854. To O. & P. R. R. Recd. of F. Bros. in good order [certain goods described]. For M. I. M. & Co., Detroit. To Mansfield." A shipping bill was also given at the same time, specifying Mansfield as the place for delivery of the goods;—*Held*, That this dray ticket, standing by itself, was not evidence of an obligation, on the part of the Railroad Company, to convey the goods to Detroit, and that the Circuit Judge was correct in charging the jury, under the circumstances, that it evidenced only an obligation to keep the goods safely, and re-deliver them, or account for their value.

*Heard July 12th. Decided July 15th.*

Error to Wayne Circuit.

The case, so far as material, is fully set out in the opinion of the Court.

*J. W. Longyear, Wm. Gray,* and *S. Larned,* for plaintiffs in error.

*Walkers & Russell,* for defendants in error.

MARTIN Ch. J.:

From the evidence in this case, it appears that in April, 1854, the plaintiffs, by an agent duly authorized, contracted

with the defendants as follows: The plaintiffs sold to defendants one hundred gross of McLane's medicines, at ten dollars per gross; "fifty gross to be shipped soon," "the other fifty gross not to be sent till the 1st of November following, unless the defendants ordered it sent sooner—the whole on six months' time after shipment"; that they were to be shipped *via* Cleveland; that the plaintiffs were notified of this contract, and shipped the first fifty gross upon such information. On the 1st of November following, the remaining fifty gross—the bill of medicines in question—were also shipped by the plaintiffs, but did not arrive in Detroit until sometime in the spring of 1855, when the defendants refused to receive them; and this action is brought to recover their contract-price.

The evidence shows that the Ohio and Pennsylvania Raiload Company were common carriers between Pittsburgh and Detroit; that, at the time these goods were received, they sent goods to Detroit sometimes by Cleveland and sometimes by Mansfield; that the goods, with a receipt, were sent by plaintiffs to the depot of the Railroad Company, the goods there delivered, and the receipt signed by one Carpenter, the agent of the Company; and that such a receipt is usually handed to the draymen on the delivery of the shippers' goods to the carrier.

The receipt was as follows:

*Pittsburgh, Novem.,* 1854.

MARKS,

/M/

To Ohio & Penn'a Rail Road.

Rec'd of Fleming Bros. in good order,

| | | |
|---|---|---|
| 35 Boxes McLane's Vermifuge, | | 7.00 |
| 15 do. do. Pills, | | 1.80 |

*For M. I. Mills & Co., Detroit.*

*To Mansfield.* Carpenter.

The words "To Mansfield" were added by Carpenter in pencil.

Carpenter, as agent, then executed the usual shipping bill for the goods, having first erased therein Detroit as the place of delivery, and substituted Mansfield.

On the trial, the Court was asked by plaintiffs in error to charge the jury that if the Railroad Company were common carriers, the first receipt, or dray-ticket, standing by itself, was *prima facie* evidence of an obligation on their part to carry the goods to Detroit. This charge the Court refused to give, but did charge that it only evidenced an obligation to keep the goods safely, and re-deliver them, or account for their value. Exception was taken to this charge, and the only error assigned in this Court arises upon it.

The contract of the plaintiffs clearly was to ship the medicines *via* Cleveland; and if they shipped them by any other route, or knowingly allowed them to go forward by any other, it was at their own risk of loss or unseasonable delivery. In the first case, the defendants would not be liable in an action for the price, and in the latter, they might refuse to receive them. This latter has been done. The plaintiffs, however, insist upon payment, upon the ground that the delivery was to the defendants—being to the common carriers contemplated by the contract; and that the responsibility of the detention was upon the common carriers, and not upon themselves.

The request of the plaintiffs' counsel that the Court charge the jury that the dray-ticket standing by itself was *prima facie* evidence of an obligation on the part of the Railroad Company to carry the goods to Detroit, was properly refused; and the charge as given was, under the evidence, correct. The dray-ticket, if it was evidence of any contract, was evidence of one to carry to Mansfield only, and not to carry by Cleveland to Detroit. But it did not stand alone. The shipping bill was made out at the same time; and that, in express terms, limited the obligation to carry to Mansfield. The words "To Mansfield" written upon the dray-ticket, and the promise to carry to that place implied in the shipping bill, informed the plaintiffs of the understanding of the carriers. When these papers were received by them, it was their duty, if they would avoid the responsibility of the safe

carriage and prompt arrival of the goods at Detroit, to direct the Railroad Company as to the route they were to be carried, or to refuse to send them forward by them. By receiving these papers without objection, and without giving further directions, they assumed all the risks of their transit, and the responsibility of their seasonable arrival was upon them.

The judgment of the Court below is affirmed, with costs.

The other Justices concurred.