SCHOOL DISTRICT NUMBER THREE OF THE TOWNSHIP OF
EVERETT v. SCHOOL DISTRICT NUMBER ONE
OF THE TOWNSHIP OF WILCOX AND
JOHN W. OHRENBERGER.

63   51<br>
102  635<br>
<hr>
63   51<br>
s29NW 489<br>
130  1561

*School district—Organization of—Notice—Equity.*

1. Where a *de facto* school district has exercised its franchises and privileges for over *two* years, it is presumed to have been *legally* organized, and it is too late to litigate that question in law or equity. How. Stat. § 5037.

2. The statutory provision requiring the town clerk to give notice of every meeting of the board of school inspectors of his township, existing prior to the 1881 amendment (Laws of 1867, p. 79; Laws of 1873, p. 81), was imperative, and the apportionment by the inspectors of the valuation of school property, on the formation of a new district, at a meeting held without such notice, was *void;* and a bill-in equity will lie in the name of the old district to enjoin the assessment and collection of a tax to satisfy the amount so apportioned as its share of such valuation.

Appeal from Newaygo. (Fuller, J.) Argued July 20, 1886. Decided October 7, 1886.

Bill filed to enjoin the assessment and collection of a tax. General demurrer sustained in court below. Reversed, with leave to answer. The facts are stated in the opinion.

*John Harwood* (*George Luton*, of counsel), for complainant:

The division of the township of Everett and school district No. 3, on the organization of the town of Wilcox, ousted the old board of inspectors from power to fix any liability on the old district in favor of the new one: *Township of Saginaw v. School District*, 9 Mich. 541; *People v. Ryan*, 19 Id. 203.

The proceedings of the board of inspectors in apportioning the valuation of the school-house were void for want

of notice of the meeting at which such action was taken:
Laws of 1867, p. 79; Laws of 1873, p. 81; *Passage v.
Inspectors of Williamstown Township,* 19 Mich. 330;
*Cannon v. Wilcox,* 48 Id. 404.

*M. Brown,* for defendant:

The school inspectors continued to be officers of the
township for which they were elected until after their suc-
cessors were elected and qualified: Comp. Laws of 1871,
§§ 482, 655; *Township of Comins v. Township of Harris-
ville,* 45 Mich. 442.

Complaint is made in paragraph 16 of the bill because,
as is claimed, the school-house site did not belong to Dis-
trict No. 3. This point is fully covered by *School District
No. 5 of Delhi v. Everett,* 52 Mich. 314.

The determination of the amount to be paid by District
No. 3 to District No. 1 is only incidental to the division
of the districts: *Cannon v. Wilcox,* 48 Mich. 404; How.
Stat. § 5044.

The complainant should not take any advantage of the
omission of notice, admitting it to be true, after such a
long lapse of time: *Ramsey v. Everett Township Clerk,* 52
Mich. 344.

And this long delay is not excused, nor any reason
shown for it: *Hathaway v. New Baltimore & Lake School
District,* 48 Mich. 251; *Granger v. Judge of Superior
Court,* 44 Id. 384; *Parman v. School Inspectors,* 49 Id. 63.

The complainant, as a school district, can take no affirm-
ative action. Such action should have been taken by the
tax-paying electors: How. Stat. §§ 5129, 5130; *Cannon v.
Wilcox,* 48 Mich. 404.

MORSE, J. The bill of complaint in this case avers that
January 1, 1876, the complainant school district consisted
of nine sections of land in the county of Newaygo; that
the inhabitants of said district lived almost entirely within
the boundaries of two villages, White Cloud and Alleyton,
situated about one mile apart.

The voters of said school district agreed to build a union
school-house as near as may be midway between the two
villages, to accommodate all the scholars; that a site was
chosen accordingly, and the same conveyed by James Alley

& Co., the owners of the land, to said school district, in consideration of the sum of one dollar, and that the same be used for school purposes and a school building, and that a school be maintained thereon.

The district commenced to build a large school building on said site, two stories high, at a great expense; did not wholly complete the same because of the want of funds, yet the lower rooms of said building were used for school purposes by the whole district for about two years.

On the fifteenth day of January, 1880, the board of supervisors of Newaygo county established a new township out of territory belonging to said township of Everett, and named it Wilcox. By this action 5¼ sections of land belonging to complainant school district were incorporated within the territory embraced by the new township. On the first Monday in April, 1880, the voters of the township of Wilcox elected the town officers for the new township, who duly qualified and entered upon their respective duties.

By the setting off of such territory from Everett to Wilcox, the three school inspectors of the township of Everett became residents of the new township, and it is claimed became, therefore, officers of the township of Wilcox. But they continued to act as board of school inspectors for Everett, and, on the seventh day of February, 1880, held a meeting, and acted upon a petition to detach all the territory of the complainant school district embraced in the township of Wilcox. The signers to said petition all resided in Wilcox.

The said board of inspectors attempted and pretended to detach the same, being 5¼ sections, as aforesaid, and, joining it with other territory, formed a new school district, to wit, the defendant school district. The said board then adjourned to the twenty-fourth of February, 1880, and from thence to the twenty-eighth of the same month, when it adjourned finally.

The members of said board were all signers to the petition upon which they acted, and were promoters of and interested in the scheme to detach said land and form said new school district.

The action of said board in taking away said 5¼ sections, leaving only 3¾ sections in the old district, with the large, expensive, and uncompleted school building in said old district, is alleged to be partial, unfair, inequitable, unjust, and illegal. By the division of the territory the union school building became inconveniently located for school purposes by said complainant school district, and it is averred that it was the duty of said school inspectors to have advertised and sold said school building, and to have apportioned the proceeds between the two districts.

But they did not do so. They valued the school property, however, at $2,500, and apportioned it as follows: $1,679.32 to defendant school district, and the balance to complainant. The valuation was made on the twenty-eighth day of February, 1880, but the apportionment did not take place until the twentieth day of March, 1880, at which time said inspectors met, without any notice, and not pursuant to any adjournment, in a drug store in the village of White Cloud.

The inhabitants of complainant school district knew nothing of this apportionment until steps were taken to have said sum of $1,679.32 spread upon the taxable property of said district.

It is further averred that said school building was not worth $2,500, and is not worth over $1,000, and would not bring that amount if offered for sale, as its value depends entirely upon its joint use for school purposes by the aforesaid two villages.

The defendant school district claims this indebtedness of $1,679.32, because said school building, in the division, was left situate upon lands embraced in the complainant school district. The said defendant school district caused

the said sum to be certified to the township clerk of Everett as so much money due from the complainant to it, and to be raised by taxation upon its taxable property.

It is further alleged that since the division of the territory the school building has become entirely unsuitable, and so inconvenient as to be nearly worthless as a school building for school purposes, and that it is impossible to remove said building to a locality convenient for school purposes within the territory now left to complainant.

The bill further shows that the township clerk of Everett certified the said sum to the supervisor of said township, and the board of supervisors has certified to and directed the defendant John W. Ohrenberger, supervisor of said township, to spread the said sum of $1,679.32 upon the tax roll of his township, and upon the taxable property of the complainant school district, which he threatens to do.

The complainant therefore prays that the action of the school inspectors in making said apportionment be declared void, and that the supervisor be enjoined from spreading the said sum of $1,679.32 upon the roll and property of the district.

A general demurrer was filed to this bill, and, upon argument in the court below, the bill of complaint was dismissed.

The bill appears to have been filed in the last of October, 1885, the *jurat* being dated October 26, 1885.

It appears that in the October term of this Court, 1883, a *mandamus* was granted compelling the clerk of the township of Everett to certify to the supervisor the amount of said sum of $1,679.32.[1] The *mandamus* proceedings were commenced in 1881, and under the petition and answer issues of fact were made and sent down for trial. A jury found against the respondent, and on the hearing here the case was practically abandoned by the respondent.

[1] *Ramsey v. Everett Tp. Clerk*, 52 Mich. 344.

There seems to be no excuse for the delay in instituting the equity proceedings. And it was too late, when this bill was filed, to question anywhere, in law or equity, the organization of the defendant school district. Whatever may have been the bias or interest of the school inspectors, or however unfair or unjust their division of the territory of the old school district, the delay in proceeding to remedy the same has been fatal to any relief in that direction. Under the statute, the defendant school district must be presumed to have been legally organized. It had exercised the franchises and privileges of a school district for over two years when this bill was filed. See How. Stat. § 5037.

By reason of this statute there is only one objection set forth in complainant's bill that can now be urged against the spreading of this tax against the taxable property of the complainant; and that is the want of notice of the meeting of the school inspectors to make the apportionment. It appears from the record of that board, which is made a part of the bill of complaint, that the board, in acting upon the petition for the detaching of the territory, adjourned from time to time, the first adjournment being for ten days for the purpose of taking the advice of the superintendent of public instruction and the prosecuting attorney. At the first adjourned day, February 17, 1880, the division or detaching of the territory was made, and it was voted to adjourn one week to ascertain the amount due each of the districts made by the new formation, and to appraise the property. At that time the board met, and adjourned to February 28, 1880. At that date the property was appraised as follows: New school building and lot, $2,500; old school-house at Alleyton, $50. On motion, board adjourned.

March 20, 1880, the board met, all the members present, and made the apportionment heretofore referred to. There is no evidence of any notice having been given of this

meeting, and it is claimed that their action was *void* for this reason.

I am of the opinion that the objection is well founded. The law in force at the time of this meeting of the inspectors was imperative that the township clerk should give notice of every meeting of the board of inspectors by posting notices of the same in three public places in the township at least ten days before such meeting. Sess. Laws 1867, p. 79; Sess. Laws 1873, p. 81.

This requirement was not dropped out of the statutes until 1881. See Sess. Laws 1881, c. 4, § 6, Act 164, p. 178.

As the tax has not yet been spread upon the supervisor's roll of the township, I do not think the delay in filing this bill should deprive the complainant of relief against the collection of a manifestly void tax.

It is urged by the counsel for the defendant school district that the complainant cannot maintain this bill, having no right to file it; that the tax-paying electors of the district are the persons alone to be injured, and the proceedings to prevent the enforcement of the tax should have been taken by them.

The school district, under our statutes, is a corporation, and, as such corporation, is represented by three officers: a moderator, director, and assessor. The affairs of the district are managed and controlled by them, under certain restrictions. The complainant school district was vitally interested in the apportionment of the property of the old district, and, by every principle of law and justice, entitled, independent of the mandatory requirement of the statute, to notice of the meeting and proceedings of the board of school inspectors to make such apportionment. It had a right to complain of the void and illegal action of the inspectors, and to act through its officers to remedy it.

There was no reason for an appeal to the township board, because said inspectors manifestly acted without jurisdiction,

and it is also doubtful if an appeal could properly have been taken; the action of the inspectors being on the twentieth of March, and on the first Monday of April following township officers were elected, and qualified, in the new township of Wilcox, and there were thereafter two· township boards, each exercising lawful jurisdiction over their respective portions of the territory of the old school district. The statute does not expressly meet or provide for such a contingency. See How. Stat. §§ 5129, 5130.

The bill is signed and verified by the assessor of the school district.

I have no doubt of the right of the school district, as a body corporate, to interfere, and ask the aid of equity to prevent the consummation of an illegal and void apportionment and creation of a debt against it by the collection of the same upon the taxable property within its limits.

The decree of the court below will be therefore reversed. The defendant will be allowed the usual time to answer as upon our ruling of demurrer.

The other Justices concurred.