BOARD OF SUPERVISORS OF PRESQUE ISLE COUNTY et al. v. THOMPSON.

(Circuit Court of Appeals, Sixth Circuit.   May 8, 1894.)

No. 136.

1. SCHOOL DISTRICTS—DE FACTO CORPORATION.
   The exercise for many years, under an act for the incorporation of a school district, of all the franchises and privileges of such a corporation, constitutes the district a de facto corporation, under the law of Michigan; and its legal existence cannot be questioned, in a collateral proceeding, on the ground that the act of incorporation was unconstitutional.

2. SAME—EXTENT OF DISTRICT.
   In the absence of constitutional restriction in that respect, the incorporation of a school district containing 180 square miles is not invalid, although general statutes provide for organization of districts not to exceed nine sections in extent.

3. SAME—SCHOOL INSPECTORS.

Const. Mich. art. 11, § 1, providing for election of township officers, among them a "township clerk, who shall be ex officio school inspector," does not render invalid an act incorporating a school district, which transfers part of the functions of such school inspector to a board to be elected by the people of the district.

4. SAME—DIVISION OF DISTRICT—APPORTIONMENT OF DEBT.

Part of the territory embraced in a township constituting a school district was severed therefrom, and organized into new townships, by act of the legislature; but by a subsequent act it was restored to the school district, and provision was made for detaching therefrom any of the new townships on apportionment of the indebtedness of the original school district. *Held* that, unless apportionment was made as so provided, the new townships were liable to creditors of the original district for debts contracted while their territory was part of it, even though de facto school districts in such new townships continued the current administration of school affairs.

5. SAME—ENFORCEMENT OF JUDGMENTS AGAINST DISTRICTS.

How. Ann. St. Mich. §§ 5109–5113, prescribing proceedings for collection of judgments against primary school districts by the judgment creditor filing a certified copy of the judgment with the town supervisor, who shall proceed to assess the amount, apply to judgments against a district incorporated by an act which makes all general laws relating to primary schools applicable in the district; and a judgment creditor of such district, who has complied with those requirements, need not make the school board parties to proceedings for mandamus to compel payment, and require them to certify the judgments to the supervisor, as required by such act for levy of taxes to pay bonded indebtedness by installments.

6. MANDAMUS—LEVY OF TAXES TO PAY JUDGMENT AGAINST SCHOOL DISTRICT—APPORTIONMENT.

A writ of mandamus to compel the levy of taxes, by several townships, to pay judgments against a union school district, need not specify how the amount shall be apportioned between them, where the law prescribes the mode of apportionment.

7. SAME—OBJECTIONS TO PETITION—WRIT OF ERROR.

An objection to a petition for mandamus, that it does not show that respondents were requested to perform the duty sought to be enforced, and refused to do it, is not available on writ of error, where, from circumstances appearing in the record, a refusal to comply with such duty must be conclusively inferred against them, and where the objection is first taken in their supplemental brief in the court of appeals.

8. SCHOOL DISTRICTS—OFFICERS—SERVICE OF PROCESS.

An act incorporating a school district provided for the election of a "president, secretary, and treasurer," whose powers and duties other than those specified should "severally be the same as those of the moderator, assessor, and director" in districts organized under general laws. *Held,* that this imposed on the secretary the duties and powers of the assessor, including power to receive service of summons for the district, although the duties of the secretary, expressly defined in the act, corresponded with those of the director under the general laws.

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

This was a writ of error to reverse an order of the circuit court for the eastern district of Michigan directing the issue of a peremptory writ of mandamus to compel the levy of a tax to pay three judgments against a school district in the county of Presque Isle, in Michigan.

Charles H. Thompson, the plaintiff below, filed his petition, averring: That he had recovered in the court below three judgments, aggregating $8,297.08, against the Union school district of the township of Rogers, in the county of Presque Isle. That said judgments were recovered in 1889 and 1891 upon bonds issued in 1871 by said school district under the authority of the legislature of Michigan. That the said school district, in 1871, and at the time of filing the petition, embraced congressional townships, town 34, range 4 E.; town 34, range 5 E.; town 34, range 6 E.; town 35, range 4 E.; town 35, range 5 E. That when the bonds were issued these congressional townships were all included within the municipal township of Rogers, but that at the time of filing the petition they were parts of different municipal townships, as follows: Town 34 N., range 5 E., constituting Belknap township; town 34 N., range 4 E., constituting Bismarck township; town 35 N., range 4 E., constituting Moltke township; town 35 N., range 5 E., constituting part of Rogers township; and town 34 N., of range 6 E., constituting a part of Posen township. That the judgments were wholly unpaid. That on August 12, 1892, duly-certified copies of the judgments were served personally upon the supervisors of the above-named townships, and upon the clerk of Presque Isle county. That according to law the board of supervisors of said county would meet on October 10, 1892, to levy taxes for the ensuing year, and that the petitioner was justly apprehensive that the board would meet and adjourn without making provision to satisfy the judgments. The prayer was for a writ against the board of supervisors of the county, the county clerk, and county treasurer, and against the supervisors and town treasurers of the above-named townships.

The various respondents filed different answers, but the defenses made were the same. They denied the validity of the judgments on the ground—First, that the union school district named as defendant had no legal existence, because organized under an unconstitutional law; and, second, that the last of the three judgments was not based on any service upon any proper officer of said alleged district. Second. They averred that the effect of the acts of 1875 and 1879, which created the townships of Belknap, Moltke, Bismarck, Posen, and re-created the township of Rogers, was to remove all these townships from the jurisdiction of the union school district, and to relieve them from liability for its indebtedness, and that, after their creation, school systems were organized in the townships of Belknap, Posen, and Moltke and Bismarck, under general laws, without interference by said union school district. Third. They averred that an act of the Michigan legislature, of 1885, purporting and attempting to re-create and reorganize the Union school district of the township of Rogers, to consist of all its original, and some additional, territory, was unconstitutional and void. Fourth. They averred that the assessed valuation of property in the different townships was not uniform, and that it would be unjust to apportion the tax in proportion to such valuation.

The case was heard on the petition and answers, and a peremptory writ was issued, "commanding the board of supervisors to immediately convene and assemble, and charge against the townships of Rogers, Moltke, Bismarck, Posen, and Belknap, in said county, the sum of $8,297.08, with interest to the 30th day of November, and costs of this proceeding, said costs being fixed at the sum of —— dollars and —— cents, and levy said amount upon lands and personal property in the several townships."

The act of 1871, establishing the Union school district of the township of Rogers, in its first section, provided that the congressional townships already specified above should "constitute one school district which shall be a body corporate by the name and style of Union School District of the Township of Rogers and by that name may sue and be sued, and shall be subject to all the general laws of the state, relative to corporations, so far as the same may be applicable; and such district shall have all the powers and privileges conferred upon school districts by the general laws of this state, all the general provisions of which, relating to common or primary schools shall apply and be in force in said district, except such as shall be inconsistent with this act or with the by-laws and ordinances of the board of education hereinafter mentioned, made in purusance of this act." The third section provided for the election of a board of education of three trustees, who should elect from their

own number a president. secretary, and treasurer whose powers and duties should "severally be the same as those of the moderator, assessor and director in school districts organized under the general laws of this state." By sections 11 and 12, the board, when authorized by a vote of a majority of the legal voters at a meeting called for the purpose, was given power to purchase sites for school houses, and to build them, and to issue bonds running for 20 years to pay for the same. A statement of the sum thus borrowed was required to be filed with the supervisor, showing the amount to be raised each year; and it was made the duty of the supervisor to cause such sum "to be assessed on the real and personal property of said district on the first general tax roll thereafter made," and the township treasurer was given the same power to collect this as other taxes.

By No. 80 of the Public Acts of Michigan of 1875 (page 118), the county of Presque Isle was organized, or rather reorganized (see Ashley v. Board, 8 C. C. A. 455, 60 Fed. 55), and the townships of Presque Isle, Posen, Belknap, Moltke, and Rogers were created. The township of Rogers had been organized before 1871, but this act changed its territory by carving out of the original township the others above named.

By No. 387 of the Local Acts of Michigan of 1885 (page 572), the act of 1871, establishing the Union school district of the township of Rogers, was amended. By the amendment, all the original territory, and some additional congressional townships, were included in the district, and provisions were made for apportioning the indebtedness to new townships organized and detached from the school district. The substance and effect of the act are fully stated in the opinion.

In section 5109 (3), How. Ann. St., under the general title of "Primary Schools," it is provided that no execution shall be issued against a school district, but that the judgment shall be collected as follows:

"Sec. 5110 (4). Whenever any final judgment shall be obtained against a school district, if the same shall not be removed to any other court, the assessor of the district shall certify to the supervisor of the township and to the director of the district the date and amount of each judgment with the name of the person in whose favor the same was rendered and if the judgment shall be removed to another court, the assessor shall certify the same as aforesaid, immediately after the final determination thereof against the district.

"Sec. 5111 (5). If the assessor shall fail to certify the judgment as required in the preceding section, it shall be lawful for the party obtaining the same. his executors. administrators, or assigns, to file with the supervisor the certificate of the justice or clerk of the court rendering the judgment, showing the facts which should have been certified by the assessor.

"Sec. 5112 (6). If the district against whom any such judgment shall be rendered, is situated in part in two or more townships, a certificate thereof shall be delivered as aforesaid to the supervisor of each township in which such district is in part situated.

"Sec. 5113 (7). The supervisor or supervisors receiving either of the certificates of a judgment as aforesaid shall proceed to assess the amount thereof, with interest from the date of the judgment to the time when the warrant for the collection thereof will expire, upon the next township assessment roll in the column for school taxes; and the same proceedings shall be had, and the same shall be collected and returned in the same manner as other district taxes."

Section 22 of Act No. 200 of the Session Laws of 1891, which prescribes the mode of levying and collecting all taxes in Michigan, requires the board of supervisors, at their October session in each year, to examine the assessment rolls in each township of the county, and adjust and equalize the valuations of real estate in each township so that they shall be upon a uniform and equal estimate; and then the rolls are to be delivered to the supervisor, to be filed in his office. By section 24, the supervisor of each township is required to file with the county clerk all certificates showing taxes to be raised for township, school, highway, drain, and other purposes before the annual October meeting of the supervisors. By section 25, the board of supervisors is required to examine the certificates showing the moneys to be raised for township, school,

and other purposes, and determine whether the same are in proper form, and legal. They are required to direct that such amounts proposed to be raised as are authorized by law shall be spread on the assessment rolls of the proper townships.

Section 27 requires each supervisor to proceed and assess the taxes apportioned to his township in proportion to the valuation entered by the board of supervisors in the assessment roll of the township of the year. By section 28, the supervisor is required to deliver the assessment roll thus prepared, and annex a warrant, signed by him, commanding the township treasurer to collect the taxes assessed therein.

Atkinson & Carpenter, for plaintiffs in error.

Henry M. Duffield, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and BARR, District Judge.

TAFT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The first objection to the issuance of the writ is that the defendant named in the judgment, the Union school district of the township of Rogers, is nothing but a name, and has no corporate existence. Therefore, it is said that the judgment is a nullity, and cannot be enforced by levying taxes, or in any other way. The existence of the district is denied on the ground that the act purporting to create it was unconstitutional. The district, for five years at least, exercised all the franchises and privileges of such a corporation throughout the territory embraced by its act of incorporation; and that, too, without any objection from those who lived in the congressional townships, which were, in 1875, created into separate municipal townships. Moreover, since 1871 until the present time, the district has exercised its franchises in so much of its original territory as remained in the township of Rogers after Belknap and the other townships were set off from it. This constitutes the district a de facto school district, under the law of Michigan, whatever the irregularities in its origin; and its legal existence after this lapse of time cannot be questioned, especially in a collateral proceeding, like that of a suit for a debt. Section 5037 of Howell's Annotated Statutes provides, among other things, that "every school district shall in all cases be presumed to have been legally organized when it shall have exercised the franchises and privileges of a district for a term of two years; and such school district and its officers shall be entitled to all its rights and privileges and immunities and be subject to all the debts and liabilities conferred upon school districts by law." School Dist. No. 3 of Everett Tp. v. School Dist. No. 1 of Wilcox Tp., 63 Mich. 51, 29 N. W. 489; Stockle v. Silsbee, 41 Mich. 615, 2 N. W. 900; Clement v. Everest, 29 Mich. 19; Fractional School Dist. v. School Inspectors, 27 Mich. 3. The foregoing statute and authorities have application to primary school districts established by school inspectors under general laws. The first section of the act, creating the district whose existence is here in question, made all general laws relating to primary schools applicable to it, and so would seem to bring the district within the saving operation of the statutory limitation. But the

statute is merely declaratory of a principle established by the supreme court of Michigan before its enactment. People v. Maynard, 15 Mich. 463; Stuart v. School Dist., 30 Mich. 69. In the last case, which was a suit to enjoin a tax, brought by a taxpayer, the powers exercised by a school district under a special act were attacked on the ground that the act had not been passed with constitutional formalities. The supreme court, speaking by Mr. Justice Cooley, held that while section 5037, above quoted, did not, in terms, apply, it was, in principle, strictly applicable. In the case of Ashley v. Board, 8 C. C. A. 455, 60 Fed. 55, where the defense to a suit against a county on bonds was that when the bonds were issued the county had no existence, because the law organizing it was unconstitutional, this court held that, if there was a county de facto, its illegal origin and organization could not be used to impeach its obligations. Judge Severens, speaking for the court, summed up our conclusions as follows:

"But it is needless to multiply authorities. They are substantially, if not all together, agreed upon the proposition that when a municipal body has assumed, under color of authority, and has exercised for any considerable period of time, with the consent of the state, the powers of a public corporation, of a kind recognized by the organic law, neither the corporation nor a private party can, in private litigation, question the legality of its existence."

Without respect, therefore, to the validity of the law of 1871, it is manifest that there was an actual corporate entity, against which judgment could be rendered. Against what territory it could be enforced is, of course, a different question.

But, even if the question is open, we have no doubt that the act of 1871, creating the Union school district of the township of Rogers, was constitutional. It is first said that it was of too large extent, because it contained 180 square miles. The provisions in the constitution of Michigan with reference to school districts are sections 4 and 5 of article 13, as follows:

"Sec. 4. The legislature shall within five years from the adoption of this constitution provide for and establish a system of primary schools whereby a school shall be kept without charge for tuition at least three months in each year in every school district in the state and all instructions in said school shall be conducted in the English language.

"Sec. 5. A school shall be maintained in each district at least three months in each year. Any school district neglecting to maintain such school shall be deprived for the ensuing year of its proportion of the income of the primary school fund and of all funds arising from taxes for the support of schools."

Here there is obviously no restriction in respect to the size of the school district. That is left wholly to the legislature. It is true that, before and after the adoption of the present constitution of Michigan, the General Statutes provided for the organization of school districts by the people, which were not to exceed nine sections in extent (Simpkins v. Ward, 45 Mich. 561, 8 N. W. 507), but it would be most unwarranted to construe such a legislative policy to be a constitutional limitation. No decision of the supreme court of the state has been cited which justifies it. On the contrary, that court seems to have recognized that the power of the legislature, in creating school districts of large size by special act, is unlimited.

In Johnston v. Cathro, 51 Mich. 80, 16 N. W. 241, the question was of the validity of a tax imposed upon property in the unorganized territory of Montmorency county, as part of the school district of Long Rapids. The validity of the tax was asserted under an act to incorporate the public school district of the township of Long Rapids; and it was held that the school district thus created by a special act included, not only the township of Long Rapids, in Alpena county, but also all the territory of the adjacent county of Montmorency, which had previously been attached to the township of Long Rapids for judicial and other purposes, and that the tax should be assessed against it all.

Another section of the constitution (section 1, art. 11) is cited to show the invalidity of the act of 1871. That section provides that:

"There shall be elected annually on the first Monday of April, in each organized township, one supervisor, one township clerk, who shall be ex officio school inspector, one commissioner of highways, one township treasurer, and one overseer of highways for each highway district, whose powers and duties shall be prescribed by law."

It is said that the supreme court of Michigan has construed this article to prevent any legislation which shall deprive the officers named in the section of functions ordinarily discharged by such officers, and that, as school inspectors possess authority in relation to schools within the township, this act of 1871, which takes away much of the authority of school inspectors, and places it in a new board of education, is void. The cases referred to are those of Hubbard v. Springwells, 25 Mich. 156; Allor v. Wayne Co., 43 Mich. 102, 4 N. W. 492; Board of Park Com'rs v. Common Council of Detroit, 28 Mich. 228–229. All that those cases hold is that under the constitution of Michigan, as shown by the section above quoted, and others, it is a cardinal principle that local matters in townships, cities, and villages shall be under the discretionary control of officers selected by the people of the local municipality, and not of officers appointed by state authority. This act of 1871 did not deprive the school inspectors of Rogers township of all their functions in that township, and, even if it did curtail them somewhat, it transferred them to a board of trustees elected by the people of the district. In Saginaw Tp. v. School District No. 1, 9 Mich. 540, the supreme court were not disposed to question the validity of the establishment of a school district in the city of Saginaw, in which the township inspectors exercised no authority whatever, but all control was lodged in three school inspectors elected by the new district. And so in School Dist. v. Dean, 17 Mich. 223, the right of the legislature, by special act, to reduce and materially modify the functions of township school inspectors, was upheld.

The second objection to the writ of mandamus is that the act of 1871 was repealed by the act of 1875, establishing the county of Presque Isle, and organizing Belknap, Bismarck, Posen, and Moltke townships out of territory embraced within Rogers township and the union school district. This act is said to have so broken up the union school district that there is no organization left to answer

for its obligations. The new Rogers township is said not to be the successor of the old.

In People v. Ryan, 19 Mich. 203, it was held that the organization of a new township severed its territory from the school district within which it was formerly embraced, and that there was no general principle of law which charged the property within the new township with the obligation to pay the debts of the old school district created before the separation, but that there must be special legislation to create such a liability. It may be conceded that the act of 1875 had the effect to sever from the Union school district of Rogers the territory included in the new townships, and to limit its extent to the township of Rogers, as newly defined. Moreover, it is too well settled for discussion that where territory is taken from one municipal corporation, and is attached to or created into another, the liabilities of the old corporation do not follow the severed territory, unless there is some special legislation effecting such a result. The old corporation remains liable for the whole debt. It is only when the entire territory of one municipality is absorbed by another that the debts of the extinguished corporation are necessarily assumed by the absorbing municipality. Mt. Pleasant v. Beckwith, 100 U. S. 514; Turnbull v. School Dist., 45 Mich. 496, 8 N. W. 65; Maltz v. Board, 41 Mich. 547, 49 N. W. 920; Halbert v. School Dist., 36 Mich. 421; Brewer v. Palmer, 13 Mich. 104. It therefore follows that unless, in the act of 1885, there is some special legislative provision by which the townships set off by the act of 1875 were made liable for the union school district debts, the remedy of the judgment creditor in this case is against the township of Rogers alone. Of course, the contention that the present township of Rogers is not the same as the old township corporation of the same name cannot be sustained.

The first section of the act of 1885 is as follows:

"Section 1. The people of the state of Michigan enact, that act number four hundred and eight of the Session Laws of Eighteen Hundred and Seventy-One, entitled 'An act to organize the Union School District of the Township of Rogers,' be amended in section one, that a new section be supplied and added to stand in the place of section nineteen (19) and that two sections be added thereto, to be known as sections twenty and twenty-one, and that the act so amended shall read as follows: Section 1. That township thirty-four, ranges four, five and six east, and township thirty-five north of ranges four and five east, and township thirty-six north of ranges two, three, four and five east, and township thirty-seven north of ranges two east, which are now embraced in the limits of what is now known as the township of Rogers in the county of Presque Isle, constitute one school district, which shall be a body corporate by the name and style of the Union School District of the Township of Rogers, and by that name may sue and be sued and shall be subject to all the general laws of this state relative to corporations so far as the same may be applicable; and such district shall have all the powers and privileges conferred upon school districts by the general laws of this state, all general provisions of which relating to common or primary schools shall apply and be in force in said district except such as shall be inconsistent with this act, or with the by-laws and ordinances of the board of education hereinafter mentioned, made in pursuance of this act."

The effect of this act was to restore to the union school district the territory taken from it by the organization of the new townships

by the act of 1875. The extent of the district, as above defined, certainly includes all the territory so set off. But it is said the act was inoperative because it was evidently passed by the legislature in ignorance that the new townships had been set off, and new school districts organized in them. This is an assumption which cannot be sustained. The purpose of the act was twofold—First, to include in the union school district some new territory in the new township of Rogers; and, second, to make provision by which the debts incurred by the union school district should be borne by all the territory within its limits when the debt was incurred. Accordingly, section 19 was added to the act, as follows:

"Whenever any township now or hereafter to be organized, wholly or in part, from the territory embraced in such school district, and from said township of Rogers, shall by resolution of its own board declare that it deems it expedient to have its territory detached from said school district the same shall be detached and set off therefrom upon the conditions contained in section twenty of this act being complied with."

And section 20 provided the machinery for apportioning the indebtedness in the proportion that the assessed valuation of the territory detached bore to that of the entire territory of the district at the time of the separation, and for collecting the sum thus found due from the new township, which was required to raise it by taxation, and pay it to the union school district in five annual installments. The language of section 19 is most significant: "Whenever any township now * * * organized * * * deems it expedient to have its territory detached from said school district, the same shall be detached upon the conditions" set forth in section 20. Such language could have application only to the townships of Belknap, Bismarck, Moltke, and Posen, because they only satisfy the description. Until the conditions are complied with, the territory remains in the union school district. This is the necessary implication. But it is said the school districts of the new townships have entirely ignored this law, and it has no effect, because the territory is actually detached in de facto school districts, and has been for five years since the passage of the act, and for ten years before. The object of the act was not to disturb the new school districts, so much as to make the new townships provide for the indebtedness which they left for the old school district with diminished resources to pay; and we are not inclined to defeat that object of the act by permitting those whom it was intended to cover to completely nullify it. We can give effect to it by holding that the result of the act is to keep within the territory of the old union school district the townships set off from Rogers township, for purposes of taxation, to pay the debts due when the severance took place, or, in other words, that the necessary implication from the act is that any territory set off from the union school district is liable to its creditors for debts contracted when a part of it, as if still a part of it, unless provision for their payment was made by the mode provided in section 20.

We are aware that it has been held by the supreme court of Michigan that where territory has been set off from school dis-

tricts under a law enjoining the officers of the two parts to apportion the indebtedness, and the officers have failed in their duty, the creditors have no recourse, except against the old district. The conclusion is based on the ground that the right of recovery by apportionment belongs to the old district, and not to the creditors. Turnbull v. School Dist., 45 Mich. 496, 8 N. W. 65; Maltz v. Board, 41 Mich. 547, 49 N. W. 920. But the difference between the provision for apportionment there considered and that in the act of 1885 is that in the latter the separation is made conditional on the apportionment. In the case cited, apportionment was not made a condition of separation, but was only enjoined as a duty on the municipal officers.

The case of School Dist. v. Parris (Mich.) 56 N. W. 925, has no application to the question here under consideration. The case was this: The supervisor of the present township of Rogers had been directed by the board of supervisors to put a certain amount on his assessment roll for the union school district in that township. He refused to do so on the ground that the amount should be apportioned to parts of the district in the other townships cut off by the act of 1875, and restored by the act of 1885. The supreme court of the state issued a mandamus against him to compel him to levy the tax against the lands of the district in the township of Rogers, holding that the assessment was not discretionary with him, but was a ministerial duty determined for him by the action of the board of supervisors, which he had no power to question. The court does say, in passing, that the effect of the act of 1875 was to take the new townships out of the union school district, and it is earnestly pressed that the necessary implication from this remark is that the act of 1885 did not restore, for school purposes, the new townships to the union school district. This remark was not necessary to the decision of the case, and, if it is to be given the meaning claimed for it, it is in direct conflict with the decision of the same court in Auditor General v. McArthur, 87 Mich. 457–465, 49 N. W. 592, where an assessment for school purposes in this same union school district was enjoined at the suit of a taxpayer, and held to be void, because not levied on the townships of Moltke, Bismarck, and Posen. But, even if it should be true that the act of 1885 has not destroyed the school districts of the new townships for the current administration of school affairs, it clearly has had the effect to impose a liability upon the new townships for the payment of the debts of the old union school district contracted before the severance, so long as the conditions of separation provided in the act have not been fulfilled. It was within the power of the legislature to impose such a liability, and it was clearly its intention to do so.

It is next objected to the writ that the school board of the union school district should have been made respondents, and required to make a certificate that the amount of judgments is due, and file it with the supervisor. This is the course enjoined by sections 10 and 12 of the act of 1871 for the levy of taxes to pay bonded indebtedness when funds to meet that indebtedness are raised by annual

installments. But we think that sections 5109–5113 of Howell's Annotated Statutes, prescribing the course to be taken for the collection of judgments against primary school districts, have application to the judgments here sought to be enforced. These sections are quoted above, in the statement of this case. They provide that the assessor of the school board of the district against which final judgment has been taken shall certify the fact to the supervisor of the township; that, failing this, the judgment creditor may himself file a certified copy of the judgment with the supervisor; that the supervisor shall proceed to assess the amount of the judgment, with interest to the date of the expiration of the warrant for collection, on the next township assessment roll, in the column for school taxes; and "that the same proceedings shall be had and the same shall be collected and returned in the same manner as other district taxes." Section 5112 provides that, if the district is situated in part in two or more townships, a certificate of the judgment shall be filed with the supervisor of each. The petition shows that these sections have been complied with by the plaintiff below,—the judgment creditor.

It is truly said that these provisions apply to judgments against primary school districts, but the first section of the act of 1871 makes all the general laws of the state relating to primary schools applicable and in force in the union school district created by that act, when not inconsistent therewith. Chapter 7 of title "Primary Schools," in which sections 5109–5113 appear, is part of the general laws referred to, and contains nothing inconsistent with the provisions of the act of 1871. We have had some doubt whether, under section 5113, it was necessary for the supervisors to file the certificate of the judgments with the county board of supervisors, and invoke the board's action, as required in section 22, et seq. of the general tax laws (Act No. 200 of 1891) in the case of all other school and township taxes. Read alone, section 5113 would seem to negative the propriety of such a course, and to make it the duty of the supervisor to assess the amount of the judgment without consulting the board of supervisors. But we think that the general legislative scheme of taxation in Michigan is that all taxes, of whatever kind, state, county, and township, shall be submitted to the board of supervisors for their examination and revision with reference to form and legality, and that one of the steps necessary to any legal assessment for taxation is the direction of the board of supervisors to the supervisor of the township to make it. Section 5090, How. Ann. St., of the general primary school laws, provides that the township supervisor shall assess the taxes voted by every school district, and certified to him by the township clerk and the district school board, upon the taxable property of the district, and shall place the same on the next township assessment roll. Its language as much excludes the necessity for referring such certificates to the board of supervisors of the county as section 5113, and yet there can be no question that, under the general tax laws, such certificates must be referred by the supervisor to the board of supervisors for their action. The board of supervisors and the county

clerk, as well as the supervisors of the five townships liable for the judgment, and the township treasurers, who must collect the tax, were therefore properly made respondents to the petition for mandamus, and included in the writ.

The next objection is that the writ does not specify how the amount of the judgment shall be apportioned between the townships. The writ does not say, but the law does. The assessment is to be levied on all the territory of all the school district as if the new townships had not been cut off from it; that is, it is to be levied on each tract of land in proportion to its assessed value. It follows that the amount is to be apportioned between the townships, according to the assessed valuations of the land embraced within the district in each township, shown by the township assessment rolls, on which the assessments for these judgments are to be entered. Had the new townships apportioned the indebtedness under the act of 1885, valuations at a different date would then have been a proper basis for apportionment; but, as they did not see fit to do so, they are to be treated as still a part of the union school district for the payment of these judgments, with the liability which that imposes. Complaint is made that valuations are not uniformly assessed in the various townships, and that gross injustice will be done by an apportionment in accordance with them. The contention is wholly untenable. The law expressly makes it the duty of the board of supervisors to equalize assessed valuations in the various townships, and state and county taxes are apportioned on those valuations. We cannot suppose that the board has not properly discharged its duty. If there is any injustice in the valuations, the township injuriously affected has ample remedy by application to the board of supervisors.

The next objection to the issuance of the writ is that the petition does not show that any of the respondents were requested to do their duty in respect of these judgments, and refused or failed to do it; and the case of U. S. v. Boutwell, 17 Wall. 604, is much relied on to sustain the objection. In that case a mandamus proceeding was begun against Mr. Boutwell, as secretary of the treasury. The supreme court of the District of Columbia denied the application, and the case was carried on error to the supreme court of the United States. While the case was pending there, Mr. Boutwell retired from office, and Mr. Richardson was appointed to succeed him. Counsel for the plaintiff in error moved to substitute Mr. Richardson as respondent for Mr. Boutwell. The motion was denied on the ground that the proceeding in mandamus was a personal action against the incumbent of an office, and he only could be punished for disobedience. In the course of the discussion of the character of the action, Mr. Justice Strong used this language:

"Hence, it is an imperative rule that, previous to making application for a writ to command the performance of any particular act, an express and distinct demand or request to perform it must have been made by the relator or prosecutor upon the defendant, and it must appear that he refused to comply with such demand, either in direct terms, or by conduct from which a refusal can be conclusively inferred."

The action in that case was therefore held to have abated. In the case at bar, it appears by averment in the petition, which is not denied, that the plaintiff below filed a certificate of his judgments with the supervisors of the townships in which the union school district lay, and with the clerk of the county board of supervisors, and that no money has since been paid on the judgments. The record also discloses that all the respondents filed answers denying the right of the plaintiff to have his judgment paid by taxation. It seems to us that from these circumstances a refusal to comply with their duty must be conclusively inferred against the respondents. In the Boutwell Case, it will be observed that when the ruling was made there was nothing at all before the court, either in evidence or pleading, to show that Mr. Richardson would not, if requested, have done that which the plaintiff was seeking to compel him to do. The objection that the petition does not show a demand and refusal must be taken promptly, or it will be waived by answer and argument on the merits. Tapping on Mandamus (page 287) says:

"The objection as to neglect of demand, or the absence of a refusal, should, in order to prevent waste of time, be made in the first instance, viz. on showing cause against the rule for the writ, and cannot be made after the merits of the case have been discussed. In Reg. v. Gamble, 3 Perry & D. 122 (Mich. Term; 3 Vict.) Lord Denman, C. J., announced that the court of queen's bench had come to a resolution not to entertain an objection to a rule for a mandamus on the ground that there had been no refusal to do the thing required by the writ, unless such objection should have been taken at the outset of the argument, in showing cause." Reg. v. Bristol & E. Ry. Co., 4 Q. B. 171; Reg. v. Eastern Counties Ry. Co., 10 Adol. & E. 531, 545.

In the Boutwell Case the objection was made on behalf of Richardson at the time of the motion to make him a party. Here, so far as the record shows, the objection was not made below at all; and it was not made in this court until counsel for plaintiffs in error filed a supplemental brief. This is much too late.

The only other objection to the writ which needs notice is directed to the last of the three judgments upon which the writ issued. The judgment shows that the summons was served upon the secretary of the union school district, and that the judgment was taken by default on this service. Section 5108, How. Ann. St. (which, as we have seen, applies to this union school district), provides for service upon a school district by leaving the summons with the assessor of the district at least eight days before the return day thereof. Section 3 of the act of 1871 provided for the election of a president, secretary, and treasurer, who should severally hold their offices for one year, "and their powers and duties shall severally be the same as those of the moderator, assessor and director organized under the general laws of this state, except varied by the provisions of this act." The word "severally," here, is used with the same meaning as "respectively," and this imposes the same duties and powers on the secretary as are discharged and exercised by the assessor. The power to receive service, therefore, for the school district, was with the secretary, and the school district was properly brought into court by such service. It is true that those duties

of the secretary which are expressly defined in the act of 1871 correspond with those of the director, as they are defined in the General Laws. The order of names, as they appear in the act, may have been a mistake, but "ita lex scripta est." For the purpose of service, the secretary of the union school district was the same as the assessor of a primary school district.

The order of the circuit court, issuing the writ of mandamus, is affirmed.