HOWELL *v.* SHANNON.

1. SCHOOL DISTRICTS—CONSOLIDATION OF—PETITION FOR.

The right of a board of school inspectors to set off a new district, or consolidate old ones, does not depend upon a petition for such action.

2. SAME—CONSENT OF TAXPAYERS—DELAY IN TESTING ORGANIZATION.

Where a school district *de facto*, formed by the consolidation of other districts, has been in existence for more than two years, most of which time proceedings by bill in equity to set aside the organization have been allowed to drag along in the

circuit court, the Supreme Court will not set aside the action of the board of school inspectors because they may have been mistaken in determining that a majority of the resident taxpayers were in favor of consolidation.

Appeal from Shiawassee; Smith, J. Submitted April 9, 1902. (Docket No. 39.) Decided May 19, 1902.

Bill by Thomas J. Howell and others against Aymer E. Shannon and others, composing the board of school inspectors of Fairfield township, to set aside the consolidation of certain school districts. From a decree dismissing the bill, complainants appeal. Affirmed.

*Watson & Chapman*, for complainants.

*A. L. Chandler* and *Smith & Hood*, for defendants.

MOORE, J. The original bill of complaint in this case was filed September 16, 1899. The amended bill of complaint was filed December 21, 1900. The case is commenced for the purpose of setting aside an order made by the board of school inspectors consolidating two school districts. The circuit judge was of the opinion the complainants had mistaken their forum; that, if they felt aggrieved at the action of the school inspectors, they should have appealed to the township board; and dismissed the bill of complaint. The case is brought here by appeal.

The record discloses that July 15, 1899, there was filed with the clerk of the board of school inspectors a statement, signed by the director of school district No. 7, that at the annual meeting a majority of the resident taxpayers had voted to consolidate school district No. 7 with school district No. 5; that the vote was 15 yeas, 2 nays. A like notice was received, signed by the director of school district No. 5, in which it was stated: "The question being that school district No. 5 consolidate with school district No. 7, and was carried in favor of consolidation, there being a majority of the resident taxpayers of said district voting in favor of consolidation, and the vote was found yeas 17 and nays 14."

The school inspectors caused notices to be posted that they would hold a meeting August 1st to consider the matter of such consolidation. At that meeting, because of representations made, it was decided not to consolidate the districts, as the action of school district No. 5 was by some considered illegal. A special meeting of school district No. 5 was had, when the question of consolidation was again submitted, when it was declared the vote stood in favor of consolidation 14, opposed 15. The regularity of this meeting was questioned, and defendants claim the vote of the annual meeting to consolidate was not rescinded.

The board of school inspectors appointed a meeting for August 30th, to again consider the question of consolidation. Proper notices were posted by the township clerk of this meeting. The record discloses that a large number of the resident taxpayers from both districts were present and were heard by the board. The board also examined the assessment roll for the purpose of determining whether a majority of the resident taxpayers of each district were in favor of consolidation, and became satisfied they were. The board then made an order reciting that, both of said school districts having voted in favor of consolidation, the two districts were consolidated, and the new district was called No. 5. An order was also made designating a place for holding the first meeting on the 7th of September, proper notices of which meeting were served. The meeting was held, and the district officers were chosen. A school site was secured, and one of the school buildings was moved upon the new site before the first bill of complaint was filed in the case.

The parties in interest doubtless having some question as to the regularity of the proceedings up to the time of the filing of the bill, another special meeting was held in school district No. 5, when it was claimed a majority of the resident taxpayers again voted in favor of consolidation, the vote being 26 yeas, 12 nays. The board of inspectors held another meeting, and again declared the

two districts consolidated. A school meeting of the consolidated district was again held, school-district officers chosen, and a school has been maintained in the new district from that time until this, and the district has drawn its proportion of public moneys.

The case, though commenced in September, 1899, and a decree made by the circuit judge in December, 1900, has been allowed to drag along, and was not presented to this court until the April term, 1902. In the meantime the only school district in fact in the consolidated territory for two years and eight months has been the new school district No. 5.

It has been held that the right of a board of school inspectors to set off a new school district does not depend upon a petition for said action. *Gentle* v. *Board of School Inspectors*, 73 Mich. 40 (40 N. W. 928). 2 Comp. Laws, § 4654, does not provide in what way it shall be shown to the board of school inspectors that a majority of the resident taxpayers had consented to the consolidation of the school districts. In *Clement* v. *Everest*, 29 Mich. 19, in considering the action of a board of school inspectors, Justice CAMPBELL used the following language:

"Irregularities are common and unavoidable in the organization of such bodies; and both law and policy require that they shall not be disturbed except by some direct process authorized by law, and then only for very grave reasons. The policy of our law is to place the whole work of local administration in the hands of the people of the locality, and it cannot be expected that town officers will be always able to conform their actions to the strict rules of technical accuracy. In such matters as concern the public, and do not interfere with private property or liberty, such action as creates municipal bodies and gives them corporate existence cannot be questioned without creating serious disturbance. If the regularity of their organization can be kept open to question indefinitely, no one could ever be sure that any of the taxes or other matters concerning his town were valid, and the whole public business might be blocked by litigation. There are some matters affecting private rights which are scrutinized

strictly, because no one can be deprived of private rights without conformity to law. Where one man's property is taken for public purposes without his consent, the taking must be justified by regular action. But where the organization of a local corporation, as a town or district, is left to the will of any particular body of electors or officers, and they proceed to execute their powers and complete the organization, their executed will ought to stand if there has been a substantial compliance with the policy of the law giving them jurisdiction. Every presumption is to be made in favor of the regularity of such action; and where there is a valid law, and an organization under it which proceeds from the lawful agencies, it should be regarded as entitled to legal standing, unless measures are speedily taken to assail such action by some competent authority. Where an appeal is granted, it must be lawfully prosecuted. Where there is no appeal, the courts will never enlarge their remedies to interfere, where they can avoid it, with existing corporate bodies provided for by law, on any formal ground. The same rule which recognizes the rights of officers *de facto* recognizes corporations *de facto;* and this is necessary for public and private security. There are probably few towns or school districts where there has not been some looseness in proceedings to organize them. Such carelessness seldom leads to serious mischief, and where it does there are usually sufficient remedies without needless intermeddling."

For the purposes of this case we do not deem it necessary to express any opinion as to whether the circuit judge was right in holding complainants have mistaken their remedy or not. The record discloses the board of school inspectors satisfied itself that a majority of the resident taxpayers consented to the consolidation of the two districts, and, acting in good faith, proceeded to consolidate them. The new district at once proceeded to secure a new site, upon which a school building was moved, and where a school has been maintained. A school district *de facto* has been in existence all this time. We think no sufficient showing has been made to authorize us at this late date to overturn the action of the board of school inspectors.

*People* v. *Every*, 38 Mich. 405; *Everett Tp. School Dist. No. 3* v. *Wilcox Tp. School Dist. No. 1*, 63 Mich. 51 (29 N. W. 489).

The decree is affirmed, with costs.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.