(27 Misc. Rep. 308.)

PEOPLE ex rel. LEONARD v. HAMILTON.

(Monroe County Court. April, 1899.)

1. INTOXICATING LIQUORS—LOCAL OPTION ELECTION.

Liquor Tax Law 1896, § 16, which regulates local option elections, provides that a certified copy of the result of the vote shall be filed by the officer with whom returns of town meetings are required to be filed by the election law. Section 19 requires issuance of license to an applicant by the county treasurer unless the aforesaid certified statement, showing that the certificate cannot be lawfully granted, has been filed as required in section 16. General Election Law, §§ 83, 84, 111, require the formal return of the canvass of votes to be made and signed by the inspectors of election. 1 Rev. St. c. 11, tits. 2, 3, provide that the justices of the town should preside at town meetings and act as inspectors of election, and give the town clerk no voice in judging as to the result; he only recording the proceedings of the meeting, which are to be signed by the justices presiding. Laws 1830, c. 289, and Town Law, § 39, term the justices "canvassers," where a town holds its meetings in separate election districts. *Held*, that a statement of the vote on the question of local option, signed only by the town clerk, was not such compliance with Liquor Tax Law, § 16, as to warrant the treasurer in refusing to issue a liquor tax certificate.

2. SAME—REVIEW OF ACTION OF OFFICER REFUSING LICENSE—CERTIORARI.

Liquor Tax Law 1896, § 28, provides that if a judge or justice shall, upon a hearing, determine that a liquor tax certificate has been denied by the officer without good reason, he may make an order commanding such officer to grant such application. *Held* that, where the officer has refused to issue the certificate because of a certified statement of a local

option election which the court holds insufficient, the order will provide for the issuance of the license unless within a reasonable time, fixed by the court, a certified statement of .the result of the election, in accordance with Liquor Tax Law, § 16, is filed with the officer.

Certiorari by the people, ex rel. John Leonard, against John B. Hamilton, as county treasurer of Monroe county, on refusal to issue a liquor tax certificate to relator.   Conditional order granted.

George D. Forsyth, for relator.
P. W. Cullinan, for county treasurer.

SUTHERLAND, J.   The relator is the proprietor of the Cottage Hotel, in the village of Spencerport, town of Ogden, and holds a liquor tax certificate expiring April 30, 1899, which authorizes him to sell liquor as a hotel keeper in said town.   On March 24th he made an application in due form to the county treasurer for a new certificate, to enable him to continue to sell during the year commencing May 1st.   With his application he tendered a bond, executed in proper form, for approval, and offered to pay the amount of the tax; but the treasurer declined to issue the certificate upon the ground that March 14, 1899, the town clerk of said town filed with him a paper, of which the following is a copy:

"County of Monroe.

"Statement of the vote of the town of Ogden on questions submitted on local option at the annual town meeting held in said 'town March 7, 1899:   Question No. 1.   Number voting 'Yes,' 250; 'No,' 328.   Question No. 2.   Number voting 'Yes,' 218; 'No,' 314.   Question No. 3.   Number voting 'Yes,' 351; 'No,' 185. Question No. 4.   Number voting 'Yes,' 260; 'No,' 305.
                                          "F. H. Dewey, Town Clerk."

In response to the writ the treasurer answers that said instrument was considered by him as.due official information that the electors of the town of Ogden had determined, by a vote taken at their town meeting under the local option provisions of the liquor tax law, that no liquors should be sold in that town during the next two years, except by a pharmacist, and upon a physician's prescription, and that accordingly he could not lawfully issue the certificate applied for by the relator.   The relator now attacks the document filed by the town clerk as not authoritative, and as insufficient upon its face to warrant the refusal of his application; and counsel agree that the legal sufficiency of the clerk's statement is the only question to be determined by me in this proceeding.

Under the liquor tax law of 1896, local excise boards are abolished, and the people of the towns are permitted, for the first time since 1847, to vote directly upon the question of sale or no sale in their respective localities.   The county treasurer has no discretion to exercise in granting or refusing liquor tax certificates. He acts ministerially and is governed by the face of the papers filed with him.   People v. Hilliard, 28 App. Div. 140, 50 N. Y. Supp. 909.   In towns where the sale of liquor is lawful, the right of any duly-qualified applicant to enter upon or continue the busi-

ness remains until, under the local option clause, the right is lost by vote of the people. There is no presumption that such a vote will be taken at the biennial town meeting. In order to have a vote, some one must take the initiative, and the conditions precedent must be complied with; and accordingly section 19 of the liquor tax law provides that when a proper application statement is made, with the requisite consents, and a sufficient bond furnished—

"The county treasurer * * * shall at once prepare and issue to the * * * person making such application and filing such bond and paying such tax, a liquor tax certificate in the form provided for in this act, unless it shall appear by a certified copy of the statement of the result of an election held on the question of local option, pursuant to section sixteen of this act, in and for the town where the applicant proposes to traffic in liquors under the certificate applied for, that such liquor tax certificate can not be lawfully granted, in which case the application shall be refused."

Under section 16, which regulates the procedure for voting upon local option, provision is made for submitting to the people four distinct questions, and the section provides that:

"A certified copy of the statement of the result of the vote, upon each of such questions submitted, shall, immediately after such submission thereof be filed by the town clerk or other officer with whom returns of town meetings are required to be filed by the election law, with the county treasurer of the county."

The word "certified" was inserted in section 16 before "copy," by the amendment of 1897.

Now, the document filed by the town clerk with the treasurer March 14th is not the "certified copy of the statement of the result of the vote" which the clerk is required to file by section 16, and with which, under section 19, the treasurer must be furnished, in order to refuse an applicant his certificate. The use of the definite article "the" before the words "statement of the result of the vote" gives to those words precise and definite application. The words undoubtedly refer to that formal return of the result of the canvass of the votes which, under sections 83, 84, and 111 of the general election law, must be made and signed by the inspectors of election. This formal document is styled throughout the election law as "the original official statement of the result" and "the original statement of the canvass." By section 110 it is made a felony for any election officer to sign "any original statement of canvass" at any place other than the polling place. Very careful provisions are made for the preservation of the ballots marked for identification, and of ballots rejected as void, which are to be secured in sealed packages, and filed "with the original statement of the canvass"; and section 111 of the election law further provides:

"If ballots are voted on any constitutional amendment, proposition or question, a similar return of the ballots and votes cast thereon shall be made and included as a part of such original statement. * * * At the end of each return contained in such original statement of the canvass, and also at the bottom of each sheet, or half-sheet thereof, the inspectors shall make and sign a certificate that the foregoing statement is correct."

That these general provisions of the election law apply to town meetings cannot be doubted. In the original enactment of the

election law (section 117, c. 680, Laws 1892), there was a direction that, in town elections held at a different time from a general election, a certified copy of "the statement of the result of the canvass" should be filed with the town clerk. In the re-enactment of the election law in 1896, section 117 was omitted, its substance being incorporated into other sections. The requirement that a certified copy of the original statement should be filed with the town clerk seems to have been omitted in the revision, possibly because the original statement itself is filed with the town clerk, as the proper custodian of the records of the town meeting.

In the town of Ogden the town meeting is not held in separate election districts, and accordingly the four justices of the peace of the town preside at the town meeting,. and discharge the duties of inspectors of election. In the general revision of the statutes adopted by the legislature in 1827, it was provided that the justices of the town should preside at town meetings, and act as inspectors of election, canvassing the vote (1 Rev. St. c. 11, tits. 2, 3), and the town clerk had no voice in judging as to the result. He only recorded the proceedings of the meeting, which had to be signed also by the justices presiding. These provisions have remained substantially unchanged to the present day, except where a town holds its town meeting in separate election districts. The four justices were called the "canvassers" (chapter 289, Laws 1830), and are so referred to in the present town law (section 39). The clerk is not made a member of the canvassing board. The statement of the result of the canvass, under the election law, must be signed by the four justices, they certifying at the end that "the foregoing statement is correct," and then the statement is filed with the town clerk as a permanent record. The town clerk should have copied this original return of the canvass of the votes upon the four propositions submitted, copying also the certificate as to the correctness of the statement, and the signatures of the justices thereto; and to this copy the clerk should have added his own certificate to the effect that it was a true copy of the original statement on file in his office, and filed this certified copy with the county treasurer. I do not think it can be fairly said that the paper actually filed with the treasurer by the town clerk is a substantial compliance with the statute. It is, upon its face, an original memorandum or declaration by the clerk, upon his own authority, as to the result of the election. It does not purport to be a copy of any original official record. It would not be competent as evidence, in its present form, in any judicial proceeding. The proper statement of the result acquires authenticity from the certificate of the justices of the peace, who are the exclusive judges of the election. Their determination, evidenced by their certificate and signatures, is of higher value as evidence than the independent written assertion of the town clerk; and of this higher form of proof, authenticated in due form, the legislature says the treasurer must be possessed, in order to warrant him in refusing an applicant for a certificate. My duty in the premises is marked out by section 28:

"If such judge or justice shall upon the hearing determine that such applica-
tion for a liquor tax certificate  *  *  *  has been denied by such officer with-
out good and valid reasons therefor, and that under the provisions of this act
such liquor tax certificate should be issued or transferred, such judge or justice
may make an order commanding such officer to grant such application."

As the case now stands, under the strict terms of the statute a
peremptory order might be made, directing the immediate issuance
by the treasurer to this relator of a liquor tax certificate; but, if
the question of the sale or no sale has been rightfully submitted
to the electors of the town of Ogden, and a majority of the people
have declared their will to be that no intoxicants shall be sold as
a beverage in their town during the next two years, and the result
of that vote has been properly ascertained, and a due certification
thereof filed with the town clerk, it still remains the duty of that
officer to file with the county treasurer "a certified copy of the
statement of the result of the vote." And I believe it to be my
plain duty not to make an order for an immediate issuance of a
certificate to the relator, but to postpone the date for the issu-
ance of the certificate for a sufficient length of time for the town
clerk to correct any error in the form of the paper filed by him,
in order that the will of the people may be respected, and the
rights of the electors upheld. It is a sound and wholesome prin-
ciple, often enunciated, that, where an election is regularly and
lawfully held, the courts will not, by a narrow and technical con-
struction of the election laws, permit the election itself to be de-
feated by the mistake or omission of a clerk or other ministerial
officer in a matter of detail, which does not mislead the public or
affect the result. People v. Wood, 148 N. Y. 142, 42 N. E. 536.
The validity and regularity of the election itself are not before
me for review. If a vote was properly taken under the local op-
tion clause, then the subsequent mistake of the town clerk, which
in this instance appears to have been innocently made, should not
occasion a peremptory and unconditional order, without an oppor-
tunity to have the clerical error rectified. To hold otherwise
would be to subordinate substance to form, and place the serv-
ant above his master. These statutes are calculated to ascertain
and give effect to the popular will, not to thwart it.

In his petition for this writ the relator asserts that, because of
certain irregularities in the preliminary procedure, the election it-
self on the local option matter was illegal and void. It is con-
ceded that I have no jurisdiction in this proceeding to pass upon
that question, but counsel for the relator state their intention to
attack the legality of the vote in any proceeding that may here-
after arise wherein that question can be judicially determined; and
it was suggested upon the argument that if an order were made by
me, directing the treasurer to issue immediately to the relator a
liquor tax certificate, a correctly attested and certified copy of the
statement of the result of the vote might then be filed by the town
clerk with the county treasurer, and a proceeding taken by any
one interested, under section 28, for the revocation of the certifi-
cate issued pursuant to my order, in which second proceeding the

legality of the election itself might be tested. This, however, might cast the burden of instituting a contest upon innocent parties. If an election has been fairly and regularly had, the people of the town of Ogden should not be compelled to take the initiative to protect their rights, and the burden should be assumed by him who asserts the invalidity of the vote. I cannot assume, for the purposes of deciding this case, that the election was invalid.

The order to be entered may provide that the county treasurer shall issue a liquor tax certificate to the relator, pursuant to the application made by him, on the payment of the tax, unless within five days the town clerk of the town of Ogden shall file with the county treasurer a certified copy of the statement of the result of an election held on the question of local option at the March town meeting, from which it shall appear that such liquor tax certificate cannot be lawfully granted, in which case the application shall be refused. This order works no injustice to the relator. If a legal election has not been held, the learned counsel who are protecting the rights of the relator will doubtless find means to prevent the filing of a certificate of an illegal election, or will advise some other method by which full redress can be accorded to the relator for any wrong suffered by him. No costs are allowed in this proceeding. Ordered accordingly.