Argued March 16, decided April 19, 1910.

## HANLEY *v.* CITY OF MEDFORD.

[108 Pac. 188.]

COURTS—TIME AND PLACE OF HOLDING.

1. To constitute a lawful court, the persons who assume to hold such court and dispense justice must be officially assembled under authority of law, and, where the law prescribes the time and place for the holding of court, then time and place are as essential limitations of jurisdiction as are subject-matter and parties.

COURTS—SPECIAL TERMS—CHANGE OF JUDGES—STATUTES.

2. Under the judicial system of the Constitution of Oregon, Article VII, Section 2, and Article VII, Section 8, prevailing prior to 1878, each Justice of the Supreme Court was *ex officio* judge of the circuit court of the district in which elected, and the power to call a special term was vested solely in such judge. The system was changed by Sess. Laws 1878, p. 32, § 7, in conformity with the Constitution, Article VII, Section 10, and required a circuit judge to be elected in each judicial district then existing, and provided that the duties and jurisdiction of said circuit court and the judges thereof shall be such as are provided by the constitution and laws. Sess. Laws 1880, p. 48 (Section 943, B. & C. Comp.). Section 1 authorizes circuit judges to hold circuit courts in any judicial district of the State where for any reason the judge elected for that district cannot attend, and section 2 (Section 944), authorizes necessary orders to be made in any suit pending therein by any other circuit judge in the absence of the judge of the court. Section 4 declared an emergency because there was no law authorizing such change of

judges. *Held,* that a judge of one circuit court under section 1 was not authorized to call a special term in another district, since that law was only an authority for a change of judges, and since only the supreme justices had authority to call a special term, and since it could not be said that the regular judge could not attend a court which as yet had no existence, and for the same reasons such order calling a special term could not be construed an order under section 2, Sess. Laws 1880.

COURTS—SPECIAL TERMS—AUTHORITY OF JUDGE—ORDER OF GOVERNOR.
3. *Held,* also, that a circuit judge would have no authority to call a special term because he was ordered to do so by the Governor under Sess. Laws 1909, c. 65, appointing an additional judge to the second circuit and defining his powers, and providing that the duties of the judge provided for by this act in addition to those enumerated shall be to hold such terms of court and perform such other judicial duties in any of the judicial districts as may be required of him by the Governor, since such act did not give such judge any new power not possessed by all the circuit judges.

JUDGMENT—EQUITABLE RELIEF—VOID JUDGMENT—INJURY TO PROPERTY.
4. Where, by a void judgment, a city has condemned land, and is threatening to enter on the land and dig a ditch thereon by virtue thereof, equity has jurisdiction to restrain action under such judgment, though it is void, since there is a cloud on the title to the property and a threatened trespass.

From Jackson: HIERO K. HANNA, Judge.

Statement by MR. JUSTICE SLATER.

In the early part of June, 1909, the city of Medford, Jackson County, Oregon, began an action in the circuit court of Jackson County to condemn and appropriate a right of way for constructing a pipe line in connection with its gravity water system across the farm and meadow lands of M. F. Hanley, the plaintiff herein. The action was instituted about the close of the regular March term of that court, which, however, adjourned for the term before the time for answering the complaint had expired. Thereafter, and within the time allowed by law, Hanley demurred to the complaint, whereupon the city applied to the Honorable H. K. Hanna, judge of the First Judicial District and of the said court, sitting in chambers, to call a special term for the trial of the cause, seting up certain facts deemed by it to be material and of special and pressing importance to the city, demanding

an early completion of its pipe line. The application, however, was denied, upon the ground of *laches* committed by the city in having neglected to begin its action in time to get the case at issue, and to avail itself of the jury impaneled to serve during the term just adjourned. Thereupon the Governor of the State, under authority supposed to be conferred by Chapter 65 of the Laws of 1909, by his official order directed Honorable John S. Coke, one of the circuit judges of the Second Judicial District, to proceed to Jackson County and call a special term of the circuit court for that county in the manner provided by law, and to try said cause. The Governor was induced to so act through an application and certificate addressed to him by the county judge of Jackson County, to the effect that, owing to the status of judicial business in that county, he, Judge Hanna, was unable to hold, and for that reason had declined to call, a special term of court. On July 17, 1909, Judge Coke in chambers at Marshfield, Coos County, which is in the Second Judicial District, issued his order, calling a special term of the circuit court for Jackson County, to be held on August 2, 1909, without the request or assent of Judge Hanna, who was then in Jackson County, and who was qualified to call, and able to attend and hold a term of court, and try the said cause, had he deemed it proper so to do. The order so issued was entered by the county clerk in the journal of the circuit court for Jackson County, and on July 22, 1909, a copy thereof was attempted to be served upon the defendant Hanley, in Jackson County. At the time appointed Judge Coke convened his court, and proceeded to a trial of the case; the county clerk and sheriff of that county being in attendance thereon, but Hanley, the plaintiff, not appearing. The demurrer having been overruled, a jury was called, to which the case was submitted upon such evidence as the plaintiff saw fit to present, and a verdict was rendered, assessing the defendant's damages

in the sum of $600. A city warrant for that amount payable to Hanley having been delivered to the clerk, a judgment, condemning a right of way across Hanley's land, was entered in favor of the city. Immediately upon the adjournment of the special term, this suit was brought by Hanley to restrain the city from entering upon his land, and to expunge from the journal of the circuit court the record of the proceedings had at the so-called special term of court, upon the theory that the court pronouncing said judgment was not legally convened, and was not held by any person authorized by law to hold such court, and for these reasons it was not a court known to the law, and its judgment not a judgment of the law, and is therefore void.

The complaint avers substantially the facts heretofore stated, and, in addition thereto, it is alleged that the record so made is a cloud upon plaintiff's title; that the city asserts and gives out that it intends to enter immediately upon plaintiff's land, and dig thereon a trench $2\frac{3}{4}$ miles long, of sufficient depth to carry a pipe line more than 16 inches in diameter, much of which is across plaintiff's meadow land; that the meadow is upon a gentle slope, the soil thereof being underlaid with a rocky formation, which assists in subirrigating the land; that the digging of the trench will cut off subirrigation; that the land appropriated includes one of plaintiff's irrigating ditches, having a carrying capacity of 1,000 inches of water, which is necessary to the irrigation of his land; and that the digging of a trench thereon for a pipe line would destroy plaintiff's said irrigating ditch, to his great and irreparable injury.

The answer contains no denial of any of the foregoing averments of the complaint, but affirmatively alleges that the special term of court was duly called and held for the trial of the cause, and that the judgment therein was duly rendered and given.

The reply put the new matter of the answer at issue, and the trial being had, a decree was rendered in accordance with the prayer of the complaint, from which defendant has appealed.                    AFFIRMED.

For appellants there was a brief over the name of *Mr. Porter J. Neff*, with an oral argument by *Mr. Robert G. Smith.*

For respondent there was a brief with an oral argument by *Mr. Allen E. Reames.*

MR. JUSTICE SLATER delivered the opinion of the court.

1. The material facts of the case having been admitted by the answer, there are but two questions of the law to be considered and determined, namely:   (1) Is the judgment of condemnation void, as the act of a court unknown to the law; and (2), if it is void, will this suit lie?   We answer both of these questions in the affirmative.   A judgment to be valid and binding must be the decision or sentence of the law pronounced by a court or other competent tribunal upon a matter contained in the record. 1 Freeman, Judgment, § 2.   The element of this definition, peculiarly applicable to the question in hand, is this: Was the decision in this case, which purports to be a judgment of a court, pronounced by a person then invested with judicial authority?   "A court consists of persons officially assembled under authority of law at the appropriate time and place for the administering of justice." *Marsden* v. *Harlocker*, 48 Or. 90, 97 (85 Pac. 328, 331: 120 Am. St. Rep. 786.)   To constitute a lawful court, therefore, the persons who assume to hold such court and dispense justice must be officially assembled under authority of law, and the court must be held at the appropriate time and place appointed by law therefor.   If the person assuming to act as judge was not then invested with judicial authority (that is, with the power of the law to declare and record its mandates), then his acts in attempt-

ing so to do are of no consequence whatever, and are void. And if he were fully invested with judicial authority, so as to make his pronouncement of the law effective, still the time and place of holding the court are equally essential; for, when the law prescribes the time and place for the holding of court, then time and place are as essential limitations of jurisdiction, as are subject-matter and parties. *Ex parte Branch & Co.,* 63 Ala. 383; *McCool* v. *State,* 7 Ind. 378; *Brumley* v. *State,* 20 Ark. 77; *Norwood* v. *Kenfield,* 34 Cal. 329, 332; *Ex parte De Hay,* 3 S. C. 567.

2. To determine the question presented, it will be necessary to consider some provisions of the fundamental law:

"The Supreme Court shall consist of four justices, to be chosen in districts by the electors thereof, who shall be citizens of the United States, and who shall have resided in the State at least three years next preceding their election, and after their election, to reside in their respective districts. The number of justices and districts may be increased, but shall not exceed five, until the white population of the State shall amount to one hundred thousand, and shall never exceed seven; and the boundaries of districts may be changed, but no change of district shall have the effect to remove a judge from office, or require him to change his residence without his consent." Article VII, § 2, Constitution of Oregon.

Section 8 of Article VII provides that:

"The circuit court shall be held twice, at least, in each year, in each county organized for judicial purposes, by one of the justices of the Supreme Court, at times to be appointed by law; and at such other times as may be appointed by the judges severally, in pursuance of law."

This latter section was intended to determine the person authorized to hold the court, and to require that it be held at particular times. As to the person, it is required that the circuit court be held by one of the justices of the Supreme Court, but it is not clearly expressed by which justice it is to be held in each particular county; yet we

think it plainly inferable from the language of other sections of that instrument, that it was intended that each justice of the Supreme Court was to be *ex officio* judge of the circuit court of the district in which he was elected; for the several justices of the Supreme Court were required, not only to be elected in separate districts, but, after their election, to reside in their respective districts. Article VII, § 2, Constitution of Oregon. We understand that to have been the interpretation of Section 8 by this court, when, in deciding the case of *Cline* v. *Greenwood,* 10 Or. 230, 232, Mr. Justice LORD in delivering the opinion made use of the following language:

"Although called Supreme Judges, they were not elected by the whole body of voters from the State, but by the voters from each judicial district from which they were chosen. They were 'justices of the Supreme Court'—five in number—and the offices they held were of such character and like number, for it was as justices of the Supreme Court that the duty of holding a circuit court in each county in their judicial districts devolved upon them under the constitution."

That section of the fundamental law of this State has always been so understood and so construed in practice up to the time the judicial system was changed by the legislature in 1878, providing for the election of circuit and Supreme judges in distinct classes in conformity with Section 10 of Article VII. The act by which this was accomplished required a circuit judge to be elected in each of the judicial districts then existing, and to be residents of their respective districts, and prescribed that: "The duties and jurisdiction of said circuit court, and the judges thereof, shall be such as are provided by the constitution and the laws." Sess. Laws 1878, p. 32, § 7. This latter provision was superfluous, since it does not purport to increase the jurisdiction of the court, or the judges thereof, and it does not require a law to make effective the jurisdiction conferred by the constitution and the

laws. The result, therefore, was to substitute for the justice of the Supreme Court previously elected from that district, a person elected in each judicial district as judge of the circuit court thereof. Each circuit judge possessed the same jurisdiction and power which previously had been vested in the justice of the Supreme Court, acting as circuit judge for that district, no greater and no less. He was the judge of that court. · His general jurisdiction was confined to, but co-extensive with, the limits of his district. This must necessarily be. Otherwise confusion would result in the exercise of judicial authority by the several judges of the circuit courts. If such were not the case, what necessity was there for the enactment of the law of October 25, 1880 (Sess. Laws 1880, p. 48) ? This act consists of two principal sections, which are now Sections 943, 944, B. & C. Comp. By Section 1 of the act, authority is given to each of the several circuit judges of this State to hold circuit court in any of the judicial districts of the State, where, for any reason, the circuit judge, elected for such district, cannot attend or is disqualified to try any cause pending therein at the time appointed for holding said court, or trying said cause; while Section 2 authorizes necessary orders to be made in any suit or action pending therein by any other circuit judge, in the absence of the judge of the court. It must certainly be plain that up to the time of the enactment of this statute it was generally understood that each circuit judge did not possess general and concurrent jurisdiction with all other judges of that class over the entire State, but that the jurisdiction of each was confined to the territorial limits of his district. The very intendment of the act is to enlarge the jurisdiction of a circuit judge beyond the limits of his district. Section 4 of the act expressly declares that "as there is no statute at present granting the authority provided for in this act, and as the same is necessary to a complete administration of the laws,"

therefore an emergency was declared. It is also equally plain that it was not the intent of the legislature by this act to confer on a circuit judge general and concurrent jurisdiction throughout the State; but a limited and conditional jurisdiction, depending upon the existence of the exigency named therein. No judicial authority can be lawfully exercised thereunder by a circuit judge beyond the limits of his district until the exigency named in the statute exists, and on which its lawful exercise depends. The power given is to hold circuit courts in any of the judicial districts of the State at the time appointed by law or by the judge of the district in pursuance of law. This cannot include power to call a special term of the circuit court because the exercise of the power depends upon the inability of the judge of the district to attend. How can it be said that there is any inability of the judge to attend upon a court that does not legally exist? If no term has been appointed by law, and none has been called by him in pursuance of law, there is nothing upon which he is required to attend. And to say that some other judge may appoint a term at a time when the judge of the district may not attend, and create a duty to attend is to say that he himself may create the condition on which the existence of the power he is attempting to exercise depends; that is, that he may invest himself with authority to call a term. And for the same reason an order calling a special term of the circuit court in the district of another judge to try a particular cause is not an order in the action or suit to be so tried, as contemplated by Section 2 of the act, being Section 944, B. & C. Comp. Again, the law has appointed three terms of court to be held each year in Jackson County, as follows: The fourth Monday in March, the first Monday in September, and the second Monday in December. The term at which the judgment in question was rendered was not a regular, but a called, term,

and its validity is called into question in respect both to the power of Judge Coke to call the term, as well as his power to hold such term in a county of another district than the one in which he was elected.

The power to call a term was conferred originally upon the justices of the Supreme Court not acting collectively or together, but severally; that is, upon each individual acting as circuit judge in his respective district, and in reference to the court over which he had authority to preside, and not in respect to the circuit court of some other district, of which he was not primarily *ex officio* the judge. The word "severally" has been construed to be equivalent in meaning to "respectively." *Supervisors* v. *Thompson,* 61 Fed. 914, 926 (10 C. C. A. 154, 166) ; *Wolf, Adm'r.* v. *Railway Co.,* 55 Ohio St. 517, 535 (45 N. E. 708: 36 L. R. A. 812.) This appears to have been the interpretation given to that clause of the constitution by the legislative assembly of 1862, when it adopted the Deady Code, of which Section 864 (now Section 890, B. & C. Comp.) declares:

"The circuit courts are created and organized, and their several jurisdictions limited and defined by the organic law of the State. Article VII of the Constitution. The terms of the court are either those appointed by law, or others appointed by the judge of the court."

The peculiar force of the language to which attention is directed comes from the final words, "by the judge of the court," which specify a particular judge; not "a judge," or any one of a number of judges, but "the judge of the court." *State ex rel. Canady* v. *Black,* 34 S. C. 194, 201 (13 S. E. 361.) As to the force to be given to the specifying adjective "the," see the following: *Ellis* v. *Karl,* 7 Neb. 381, 386; *United States* v. *Hudson* (*D. C.*), 65 Fed. 68, 71; *People* v. *Hamilton,* 58 N. Y. Supp. 584, 586; *Scharff* v. *Commonwealth,* 2 Bin. (Pa.) 514, 519; *Palmer, Adm'r.* v. *Kellogg,* 11 Gray (Mass.) 27, 28. Un-

der the judicial "system" thus organized by the provisions of the fundamental law, and prevailing prior to 1878, it appears that each justice of the Supreme Court was *ex officio* the judge of the circuit court of the counties of the district in which he was elected, and the power to call a special term of court therein was vested solely in such judge, and not generally in the justices of the Supreme Court. In 1878 the legislature, in conformity with Section 10, Article VII, Constitution of Oregon, provided by enactment for the election of Supreme and circuit judges in distinct classes, and for the necessary number of judicial districts and circuit judges therein. One judge was to be elected in each of such judicial districts, who was required to be a resident of his respective district. Since then the circuit judges, so elected, have occupied precisely the same position with respect to the circuit courts, and have been invested with the same judicial authority and jurisdiction previously occupied and exercised by the respective justices of the Supreme Court.

3. The order calling a special term was made by Judge Coke by direction of the Governor, acting under authority of Section 5 of the act of February 19, 1909 (Sess. Laws 1909, c. 65), which reads as follows:

"The duties and judicial labors of the judge provided for by this act, in addition to those already enumerated in Section 3 hereof, shall be to hold such terms of court and perform such other judicial duties in any of the judicial districts of this State, other than the second, as may be required of him by the Governor of this State; *provided,* that when such duties are required of him in any judicial district of this State, other than the second, the county judge of the county wherein such duties are required, shall make application to the Governor stating the reason and the necessity of such duties, and the Governor may, in his discretion thereon, direct the said judge to go and perform the same."

This act provided for the appointment of an additional circuit judge for the second judicial district, and defined his duties with relation to the two judges then holding offices therein. Hon. John S. Coke was appointed by the governor to the office, and at the time of making the order in question he was invested with all the judicial power of a circuit judge of the State, and under obligation to perform the duties imposed by the statute. Previous to this enactment, as we have seen, a circuit judge was clothed with but limited authority (Section 943, B. & C. Comp.) to hold circuit court in any other of the judicial districts of the State than his own (Section 944) to make necessary orders in any suit or action pending in another district. But the exercise by any circuit judge of the limited authority thus conferred was not obligatory, but merely permissive or optional. The intent of Section 5, of the act of 1909, was not to invest him with any additional or unusual judicial authority not previously possessed by all other circuit judges of the State, but to impose upon him an obligation, a duty, of executing the limited powers conferred by Section 943, B. & C. Comp., in any particular instance, when directed so to do by the Governor of the State. The act of 1909 speaks only of "the duties and judicial labors," and not of the judicial power and authority, of the judge appointed thereunder. It does not authorize the Governor to require of him the performance of some judicial act, which previous to the enactment was not within the official power of any circuit judge. But the sole intent is that he shall be required to hold such terms of court and perform such judicial duties as the law then contemplated he might perform. Therefore we conclude that at the time of the entry of the supposed judgment there was a complete void of authority of law in John S. Coke to create a legal term of court by calling a special term for Jackson County, as well as a lack of power in such person to hold such term. It fol-

lows that the assemblage of persons claiming to act as a court at that time was not a court known to our law, and hence all of the attempted proceedings then had and entered of record were void, and of no effect whatever. *Baisley* v. *Baisley,* 15 Or. 183, 184 (13 Pac. 888) ; *Ex parte Branch,* 63 Ala. 383, 384; *McCool* v. *State,* 7 Ind. 378; *Batten* v. *State,* 80 Ind. 394, 397; *State* v. *Ray,* 97 N. C. 510, 513 (1 S. E. 876) ; *Brumley* v. *State,* 20 Ark. 77; *Norwood* v. *Kenfield,* 34 Cal. 329, 332; *Ex parte De Hay,* 3 S. C. 564, 567; *Gresham* v. *Ewell,* 85 Va. 1, 3 (6 S. E. 700.)

4. The last point necessary to be considered is whether under the facts of this case and the law as we have found it in respect to the validity of the judgment, a court of equity has jurisdiction to grant the relief prayed for by the complaint.   It is urged by the defendant that, although the judgment is void, plaintiff's remedy was by appeal from the supposed judgment, and that equity will not entertain a suit to set aside or cancel a judgment that upon its face is void. But some of the cases last cited go so far as to say that when there was no court no judgment could by law have been pronounced; that what was done under such circumstances was not only a nullity in the ordinary significance of the term, when applied to judgments of courts having no jurisdiction over the subject-matter or the parties, but is not even the act of a court, and therefore not susceptible of an appeal, or subject to revision in an appellate tribunal.   *Wicks* v. *Ludwig,* 9 Cal. 173.   The writer is inclined to agree with this view of the law, but it is not necessary to rely upon such principle; for the plaintiff has alleged and shown that the pretended judgment is a cloud upon his title, and also that under cover thereof the defendant city is about to trespass upon plaintiff's premises, and dig up and destroy the substance of his estate.   This court has held that, when the real purpose of invoking the interposition of equity

is to prevent a cloud being cast upon plaintiff's title to real property, jurisdiction will be assumed... *White* v. *Espey*, 21 Or. 328 (28 Pac. 71) ; *George* v. *Nowlan*, 38 Or. 537, 541 (64 Pac. 1). The main purpose of this suit, however, is to restrain the city and its agents and employees from trespassing upon plaintiff's premises under cover of this void record, and doing that which will amount to a substantial destruction of his estate. There can be no doubt that, under such circumstances, equity will enjoin entries upon land for the purpose of making excavations in the soil against the consent of the owner, and to his irreparable injury. *Silsby* v. *Strong*, 38 Or. 36, 38 (62 Pac. 633) ; *Sheridan* v. *McMullan*, 12 Or. 150 (6 Pac. 497) ; *Bishop* v. *Baisley*, 28 Or. 119 (41 Pac. 936) ; *Roots* v. *Boring Junction Lum. Co.*, 50 Or. 298 (92 Pac. 811 : 94 Pac. 182.)

From this conclusion, it must necessarily follow that the decree of the lower court be affirmed; and it is so ordered.                                              AFFIRMED.