Argued and submitted March 10, 2005, judgment of circuit court
affirmed May 25, 2006

LINCOLN LOAN COMPANY,
an Oregon corporation,
*Petitioner on Review,*

*v.*

The CITY OF PORTLAND,
a municipal corporation,
*Respondent on Review,*

*and*

STATE OF OREGON,
*Intervenor-Respondent on Review.*

(CC 0307-07891; CA A124756; SC S51666)

136 P3d 1

Ridgway K. Foley, Jr., of Greene & Markley, P.C., Portland, argued the cause and filed the briefs for petitioner on review. With him on the briefs was Steven E. Benson, Portland.

Harry M. Auerbach, Senior Deputy City Attorney, Portland, argued the cause for respondent on review.

Mary H. Williams, Solicitor General, Salem, argued the cause for intervenor-respondent on review State of Oregon.

Thomas M. Christ, Portland, filed an *amicus curiae* brief for himself.

Before Carson, C. J.,** Gillette, Durham, Riggs, Balmer, and Kistler, JJ.***

BALMER, J.

---

** Chief Justice when case was argued.

*** De Muniz, Chief Justice when the decision was rendered, did not participate in the consideration or decision of this case.

**BALMER, J.**

In this declaratory judgment action, plaintiff challenges the constitutionality of the procedure by which the voters adopted Article VII (Amended) of the Oregon Constitution in 1910. For the reasons that follow, we conclude that plaintiff may not challenge that procedure in this case. Accordingly, we affirm the circuit court's judgment in favor of defendant.

The issue arises in prosaic circumstances. In 1995, plaintiff Lincoln Loan obtained a money judgment against defendant City of Portland in Multnomah County Circuit Court (the "1995 judgment"). Defendant appealed, and the Court of Appeals reversed the judgment. *Lincoln Loan Co. v. City of Portland*, 158 Or App 574, 976 P2d 60 (1999), *rev den*, 330 Or 138, 6 P3d 1098, *cert den*, 531 US 1013 (2000) (*Lincoln Loan I*). After the final appellate judgment in that case had issued, plaintiff filed this declaratory judgment action seeking to set aside that judgment on the ground that the Court of Appeals "does not lawfully exist" and to obtain a declaration that the 1995 judgment is valid and enforceable.

Plaintiff alleged that the 1910 initiative measure that amended Article VII violated the Oregon Constitution because it had been adopted improperly. Plaintiff argued that the 1910 initiative (1) encompassed multiple constitutional amendments that were not closely related, but did not permit voters to vote separately on each amendment, in violation of Article XVII, section 1, of the Oregon Constitution; (2) had been enacted without complying with the canvass and proclamation requirements of Article XVII, section 1; and (3) failed to set forth the full text of the proposed constitutional amendment in violation of Article IV, section 1(2)(d), of the Oregon Constitution. Plaintiff asserted that, absent the provisions of Article VII (Amended) that had been made part of the constitution by the 1910 initiative, the legislature had no authority to enact the statutes by which it created the Court of Appeals in 1969. Therefore, plaintiff contended, the Court of Appeals did not lawfully exist and had "no jurisdiction and no authority" to overturn the 1995 judgment.

The trial court entered summary judgment in favor of defendant, holding that plaintiff had filed its challenge to the 1910 initiative too late to comply with any applicable statutes of limitations and that plaintiff had no standing to challenge the 1910 initiative. Plaintiff appealed. The Court of Appeals certified the appeal to this court, and we accepted that certification.

As we describe more fully below, we conclude that the final judgment in *Lincoln Loan I* bars plaintiff from bringing this action. Plaintiff could have raised the legal theories that it asserts in this declaratory judgment proceeding in the earlier case that it brought against defendant. Plaintiff litigated that case to final judgment. Under long-standing principles of claim preclusion, plaintiff may not collaterally attack that final judgment in this proceeding.

## I. PLAINTIFF'S THEORY OF THE CASE

■ We first outline plaintiff's theory of the case. As noted previously, plaintiff asserts that the procedure by which the voters adopted Article VII (Amended) in 1910 suffered from three constitutional defects. For that reason, according to plaintiff, Article VII (Amended) never became part of the Oregon Constitution, and Article VII (Original) "remains in full force and effect today." Article VII (Original), section 1, provides, in part, that "[t]he Judicial power of the State shall be vested in a Supr[e]me Court, Circuit[ ] Courts, and County Courts * * *." That provision also refers to justices of the peace and to municipal courts. However, Article VII (Original) does not mention or provide for an intermediate Court of Appeals and does not authorize the legislature to create a Court of Appeals—or, indeed, any court. In contrast, Article VII (Amended), section 1, provides, in part:

"The judicial power of the state shall be vested in one supreme court and in such other courts as may from time to time be created by law. * * *"

The legislature created the Court of Appeals in 1969. Or Laws 1969, ch 198. If Article VII (Amended), section 1, is a valid part of the Oregon Constitution, then the legislature had the authority to create the Court of Appeals, and plaintiff's claim fails. If Article VII (Amended), section 1, is *not* a

valid part of the Oregon Constitution, then the legislature had no authority to create the Court of Appeals, the Court of Appeals had no authority to reverse plaintiff's 1995 judgment against defendant, and that judgment, as plaintiff alleges, "is valid and enforceable in its entirety."

## II. DEFENDANT'S CLAIM PRECLUSION ARGUMENT

Defendant answered the complaint by admitting and denying plaintiff's allegations and asserting a number of affirmative defenses. Among those affirmative defenses, defendant asserted that the trial court should decline to exercise jurisdiction over plaintiff's declaratory judgment action because "[p]laintiff had a more appropriate remedy to challenge the jurisdiction of the Court of Appeals by direct challenge to such jurisdiction in response to defendant's appeal of the [1995 judgment]." Defendant also raised a related affirmative defense of estoppel, asserting that, by participating throughout the litigation of *Lincoln Loan I*, "plaintiff affirmatively asserted the benefit of provisions of Article VII as amended by the initiative measure plaintiff attacks in this action."[1]

Although defendant did not denominate it as such in its answer, those affirmative defenses squarely raise the issue whether, under the doctrine of claim preclusion, the entry of a final, litigated judgment in *Lincoln Loan I* bars plaintiff from bringing this action. We begin by outlining the contours of claim preclusion and then consider the application of those principles to this declaratory judgment proceeding.

■■ This court recently described claim preclusion in *Bloomfield v. Weakland*, 339 Or 504, 510-11, 123 P3d 275 (2005):

"The doctrine of claim preclusion, formerly known as *res judicata*, generally prohibits a party from relitigating the

---

[1] In *Lincoln Loan I*, defendant asserted in its brief in the Court of Appeals that that court had jurisdiction over the appeal of the 1995 judgment. In *its* brief, plaintiff stated that it "accept[ed] Defendant's statement of the basis of and dates governing its appeal." Plaintiff separately invoked the jurisdiction of the Court of Appeals in *Lincoln Loan I* by filing a notice of cross-appeal challenging the trial court's order granting a directed verdict in favor of certain individual defendants in that case.

same claim or splitting a claim into multiple actions against the same opponent. As this court stated in *Rennie v. Freeway Transport*, 294 Or 319, 323, 656 P2d 919 (1982),

> " 'a plaintiff who has prosecuted one action against a defendant through to a final judgment binding on the parties is barred on *res judicata* grounds from prosecuting another action against the same defendant where the claim in the second action is one which is based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action.'

"*See also Drews v. EBI Companies*, 310 Or 134, 140-41, 795 P2d 531 (1990) (to same effect). The rule forecloses a party that has litigated a claim against another from further litigation on that same claim on any ground or theory of relief that the party could have litigated in the first instance. *Dean v. Exotic Veneers, Inc.*, 271 Or 188, 194, 531 P2d 266 (1975)."

As an initial matter, the doctrine of claim preclusion appears to apply to plaintiff's complaint here. The record demonstrates that, in 1994, plaintiff filed an action against defendant (and others) and that, in 1995, plaintiff filed a fourth amended complaint that, in part, alleged violations of its federal constitutional rights and sought damages under 42 USC section 1983. As a result of a jury verdict, plaintiff obtained the 1995 judgment against defendant, which awarded plaintiff damages of more than $2.7 million. Defendant appealed that judgment, and plaintiff participated in the appeal, briefing and arguing the appeal in the Court of Appeals. After the Court of Appeals reversed the 1995 judgment, plaintiff filed a petition for review by this court, which this court denied, and then it filed a petition for a writ of *certiorari* from the United States Supreme Court, which that court denied. Ultimately, as the complaint in this action alleges, in August 2000, the circuit court clerk entered an appellate judgment issued by the Court of Appeals pursuant to its opinion reversing the 1995 judgment. The entry of that appellate judgment concluded the earlier litigation between plaintiff and defendant.

To bring a declaratory judgment action, a plaintiff must allege that its "rights, status or other legal relations are affected" by, *inter alia*, a constitutional provision or statute. ORS 28.020. Plaintiff argues that the 1995 judgment was a property right of plaintiff's that was impaired when the Court of Appeals reversed it and that the alleged constitutional infirmity of the Court of Appeals "affected" plaintiff's rights because the Court of Appeals had no authority to reverse the 1995 judgment. Plaintiff's complaint seeks a declaration that the 1995 judgment "is valid and enforceable." Thus, the only claim that plaintiff asserts in its complaint in this action arises from the Court of Appeals' reversal of the 1995 judgment and the subsequent entry of a final judgment in defendant's favor.

That description of *Lincoln Loan I* demonstrates that, at least as an initial matter, plaintiff's claim appears to be barred by claim preclusion. To use this court's words in *Bloomfield*, quoting its earlier decision in *Rennie*, plaintiff "prosecuted one action against a defendant through to a final judgment binding on the parties" and plaintiff now is "prosecuting another action against the same defendant where the claim * * * is one which is based on the same factual transaction that was at issue in the first * * *." *Bloomfield*, 339 Or at 510-11.

Here, in seeking to revive the 1995 judgment, plaintiff is pursuing the same relief that it sought at trial and through the appellate stages of the earlier litigation. Again using the words of *Bloomfield*, the remedy plaintiff seeks "is of such a nature as could have been joined in the first action." *Id.* at 511. Although plaintiff, in this proceeding, seeks to restore the effect of the 1995 judgment by having this court hold that the Court of Appeals lacked authority to reverse that judgment, that issue could have been raised in the earlier litigation. Defendant points out, and plaintiff does not dispute, that plaintiff could have raised the constitutional challenges that it mounts in this case before the Court of Appeals or before this court during the appeal of the 1995 judgment. Well-settled principles of claim preclusion "foreclose[ ] a party that has litigated a claim against another from further litigation on that same claim on any ground or

theory of relief *that the party could have litigated* in the first instance." *Id.* (emphasis added).

We agree with defendant that, in this proceeding, plaintiff asserts the same claim that it asserted in the earlier case, that it seeks recovery from the same party, and that the "ground[s] or theor[ies]" that plaintiff asserts here—specifically, its challenges to the 1910 adoption of Article VII (Amended) and the related claim that the Court of Appeals was unconstitutionally established—could have been raised and litigated in the prior case. Accordingly, principles of claim preclusion ordinarily would bar plaintiff from bringing this case.

## III. CLAIM PRECLUSION AND SUBJECT MATTER JURISDICTION

Plaintiff argues, however, that claim preclusion and related doctrines do not apply to plaintiff's claim here because the Court of Appeals lacked subject matter jurisdiction to review and reverse the 1995 judgment. In plaintiff's words, because of the constitutional defects in the adoption of Article VII (Amended), the legislature had no authority to create the Court of Appeals, and that court therefore is a "pretend" or "non-existent" court. Because the Court of Appeals lacked subject matter jurisdiction, according to plaintiff, the resulting final judgment in *Lincoln Loan I* is void, and "[o]ne may challenge a void judgment at any time."

Plaintiff correctly observes that some court decisions recognize a narrow exception to the claim preclusion rules described above when the prior judgment was void because the court that rendered it lacked jurisdiction. The more difficult issues, however, are the scope of that exception and whether the judgment that plaintiff challenges here comes within that exception. We now turn to those issues.

### A. *Background*

As we consider the relevant authorities, it will be helpful to keep in mind the underlying purposes of the doctrine of claim preclusion and of the exceptions to the doctrine. It is axiomatic that "[a] judgment may properly be rendered against a party only if the court has authority to adjudicate the type of controversy involved in the action." *Restatement*

*(Second) of Judgments* § 11 (1982). Ordinarily, however, if a party to a proceeding contends that a particular court lacks the authority to adjudicate the proceeding, then that party must raise that issue with the court before the judgment becomes final. *Id.* at § 11 comment d. When a question is raised as to whether a particular court has subject matter jurisdiction over a proceeding, that court has authority to decide the question. *Id.* at § 11 comment c; *see also Clawson et ux v. Prouty et ux*, 215 Or 244, 249, 333 P2d 1104 (1959) ("Every court confronted with a law suit of any kind is under both the necessity and the duty of determining whether or not it has jurisdiction to entertain the suit, and it necessarily has jurisdiction to make this determination.") (internal quotations and citations omitted).

■ As described above, the doctrine of claim preclusion generally bars a party from challenging in a separate proceeding issues that were or could have been determined in a prior, litigated action between the same parties. That principle applies to the issue of subject matter jurisdiction, with limited exceptions. The *Restatement* articulates the rule as follows:

> "*When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation* except if:
>
> "(1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or
>
> "(2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or
>
> "(3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction."

*Restatement* at § 12 (emphasis added).

The *Restatement* rule attempts to accommodate two principles that, in some cases, may conflict: the *finality* of a judgment and the *validity* of a judgment. As the drafters of the *Restatement* put it:

> "The principle of finality has its strongest justification where the parties have had full opportunity to litigate a controversy, especially if they have actually contested both the tribunal's jurisdiction and the issues concerning the merits. Yet the principle of finality rests on the premise that the proceeding had the sanction of law, expressed in the rules of subject matter jurisdiction. * * * If the question [of subject matter jurisdiction as decided by the tribunal whose jurisdiction is challenged] is decided erroneously, and a judgment is allowed to stand in the face of the fact that the court lacked subject matter jurisdiction, then the principle of validity is compromised. On the other hand, if the judgment remains indefinitely subject to attack for a defect of jurisdiction, then the principle of finality is compromised."

*Id.* at § 12 comment a.

B. *Oregon Cases*

With that background in mind, we turn to the principal Oregon cases upon which plaintiff relies in arguing that claim preclusion should not bar its challenge to the Court of Appeals' authority to render its decision in *Lincoln Loan I.* Although, as we shall see, those cases are easily distinguishable, we discuss them here because they illustrate at least some of the principles discussed above and narrow the issue that we must decide in this case. We later return to cases from other jurisdictions and to the *Restatement.*

Plaintiff cites *Hughes v. Aetna Casualty Co.*, 234 Or 426, 383 P2d 55 (1963), for the proposition that one may challenge a void judgment at any time. In that case, this court held that an adoption decree was void as to the biological mother, who never had received notice of the proceeding or consented to the adoption. Because the mother received no notice, she had no opportunity to raise *any* legal challenge. Here, of course, both parties participated fully in the earlier litigation, and plaintiff could have raised in the earlier case every legal issue that it raises here.

*Dixie Meadows Co. v. Kight*, 150 Or 395, 45 P2d 909 (1935), on which plaintiff also relies, is similar. Plaintiff cites that case as holding that "[o]ne may maintain a suit in equity to set aside a final judicial determination in another case where the former court lacked jurisdiction to enter the judgment." However, in *Dixie Meadows*, the defendant in the earlier case never had been served properly, and the judgment at issue was a default judgment. This court stated that, even if the defendant in the earlier case had received actual notice of the proceeding, the plaintiff's service on the defendant had been ineffective because it had not met statutory service requirements. *Id.* at 405. For that reason, the court in the earlier case did not acquire personal jurisdiction over the defendant before entering the default judgment, and the defendant therefore could seek to set aside that judgment in a later proceeding. In this case, in contrast, the parties were served properly in the earlier case, and they litigated the case fully at the trial and appellate levels. Unlike the defendants in *Hughes* and *Dixie Meadows*, plaintiff here hardly can claim that it would be inequitable to enforce the litigated judgment in the earlier case.

Plaintiff's other cases are similarly unhelpful. Plaintiff cites *Smith v. Cameron et al.*, 123 Or 501, 262 P 946 (1928), which states that, if a court lacks jurisdiction, its judgment is a nullity. *Id.* at 506. In that case, the plaintiff had filed an action, and the trial court had entered judgment for the plaintiff, before the legislature had passed a statute authorizing the relief that the plaintiff sought. On appeal, this court determined that the "action was prematurely commenced" and reversed. *Smith* thus stands for the unremarkable proposition that a party to an action may *appeal* an adverse judgment and challenge the trial court's jurisdiction to enter that judgment. *Smith*, however, provides no support for plaintiff's argument that it should be permitted to mount a *collateral* attack on a final, litigated judgment in a prior proceeding between the same parties.

Finally, plaintiff relies on *Hanley v. City of Medford*, 56 Or 171, 108 P 188 (1910). Plaintiff states that, in *Hanley*, "both parties appeared and tried a case to a judge [who was] subsequently found to lack authority to conduct that trial."

Plaintiff asserts that, in *Hanley*, this court rejected the argument that the jurisdictional defect should have been litigated by appealing the challenged judgment and held instead that it was permissible for a party to bring a later action in equity to challenge the earlier judgment on the grounds that the court that entered the judgment lacked subject matter jurisdiction. Although the procedural posture of *Hanley* was unusual, the result and this court's rationale were not—and they provide little support for plaintiff. Nevertheless, because plaintiff relies on *Hanley*, and because *Hanley* is more similar to this case than any of the other cases that plaintiff cites, we discuss *Hanley* in some detail.[2]

*Hanley* involved a judgment entered in an earlier case between the City of Medford and Hanley. The city had filed a condemnation complaint in circuit court, and Hanley had appeared by filing a demurrer. 56 Or at 172. The city, seeking a quick trial of the matter, applied to the trial judge for a special term of court, but the trial judge denied the application. *Id.* at 172-73. At the request of a county official, the Governor, without the approval or consent of the original trial judge, appointed a different circuit court judge from a different judicial district to try the case. The case was tried, but Hanley did not participate. *Id.* at 173. Hanley lost, and the court entered a judgment condemning a portion of his property. Hanley immediately filed a separate case seeking to clear the cloud on his title caused by the condemnation judgment and to prevent the city from trespassing on his land. He argued that the Governor lacked the authority to appoint a different judge to try the case and that the condemnation judgment therefore was void. *Id.* at 174.

We note first that plaintiff misstates in a critical respect the facts of *Hanley*, making *Hanley* appear more similar to this case than it actually is. As described above,

---

[2] In discussing and distinguishing *Hanley*, we do not necessarily approve the analysis and result in that case. The decision in *Hanley* and the *dictum* on which plaintiff relies reflect an earlier and more limited view of claim preclusion that gave less weight to the principle of finality than do the modern cases in Oregon and other jurisdictions. *See generally Restatement (Second) of Judgments* § 12 comment a & Reporter's Note (1982) (describing differences between "traditional doctrine" of *res judicata* and "modern rule on conclusiveness of determinations of subject matter jurisdiction").

Hanley did not "tr[y the case] to a judge subsequently found to lack authority to conduct that trial." Rather, after the trial was turned over to a different judge that Hanley asserted lacked jurisdiction, Hanley declined to participate. In contrast, of course, plaintiff here participated fully in the appeal of the judgment that it now attacks, filing briefs, arguing the case in the Court of Appeals, filing a petition for review, and filing a petition for *certiorari*. Plaintiff cannot assert credibly that it stands in the same position as Hanley.

Second, the statement in *Hanley* on which plaintiff relies to support its position that it may attack an earlier judgment collaterally is a *dictum*, as this court decided that case on a different ground. This court briefly set out the city's and Hanley's arguments before moving to a different equitable basis for its disposition of the case:

> "It is urged by the [city] that, although the judgment is void, plaintiff's remedy was by appeal from the supposed judgment, and that equity will not entertain a suit to set aside or cancel a judgment that upon its face is void. But some of the cases last cited go so far as to say that *when there was no court no judgment could by law have been pronounced; that what was done under such circumstances was not only a nullity in the ordinary significance of the term, when applied to judgments of courts having no jurisdiction over the subject-matter or the parties, but is not even the act of a court, and therefore not susceptible of an appeal*, or subject to revision in an appellate tribunal. * * * The writer is inclined to agree with this view of the law, *but it is not necessary to rely upon such principle*; for the plaintiff has alleged and shown that the pretended judgment is a cloud upon his title, and also that under cover thereof the defendant city is about to trespass upon plaintiff's premises, and dig up and destroy the substance of his estate. This court has held that, when the real purpose of invoking the interposition of equity is to prevent a cloud being cast upon plaintiff's title to real property, jurisdiction will be assumed."

56 Or at 183-84 (emphasis added; citation omitted).

The *dictum* in *Hanley* leaves open the possibility that, beyond cases where a court lacks subject matter jurisdiction but nevertheless enters a judgment—in which cases,

the party contesting jurisdiction must assert that claim on appeal—some purportedly judicial acts may be ignored because they were decided by "no court." Those rare cases are "not even the act of a court, and therefore not susceptible of an appeal." In those circumstances, a party need not appeal the result, which is "no judgment," but may pursue a collateral attack in a different case. However, nothing in *Hanley* suggests that the court considered the factual situation there to come within that exception. Instead, the court held that it had equitable jurisdiction to consider Hanley's effort to clear the cloud on his title and prevent the city from trespassing on his property.

Our review of the Oregon cases discloses no support for plaintiff's argument that it may litigate a case to a final appellate judgment in an Oregon court and then collaterally attack the lawful existence of the court that issued the judgment in a separate proceeding.

## C. Federal Cases

Federal cases applying claim preclusion principles reach the same result. The leading case is *Stoll v. Gottlieb*, 305 US 165, 59 S Ct 134, 83 L Ed 104 (1938), in which the United States Supreme Court considered a state court judgment that had declined to give *res judicata* effect to an earlier bankruptcy court judgment. The Court reversed, holding that even if the bankruptcy court had lacked subject matter jurisdiction, that court's final judgment barred later litigation between the parties on the same issue:

> "Every court in rendering a judgment, tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter. * * * We see no reason why a court, in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation."

305 US at 171-72.

In *Stoll*, the issue of subject matter jurisdiction was litigated in the first proceeding, but in *Chicot County Drainage Dist. v. Baxter State Bank*, 308 US 371, 60 S Ct 317,

84 L Ed 329 (1940), the Court explicitly extended the principle to cases in which the issue could have been raised, but was not. The rule is now well settled in the federal courts:

> "A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not * * * reopen that question in a collateral attack upon an adverse judgment. It has long been the rule that principles of res judicata apply to jurisdictional determinations—both subject matter and personal."

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 US 694, 702 n 9, 102 S Ct 2099, 72 L Ed 2d 492 (1982). In summary, federal cases applying the principles of claim preclusion do not support plaintiff's position that it may now collaterally attack the earlier judgment.

### D. *Other Authorities*

As discussed above, although many cases discuss the importance of subject matter jurisdiction or state that lack of subject matter jurisdiction never can be waived, very few modern decisions—and none remotely similar to this case—have permitted a party to set aside a final, litigated judgment in an earlier case for lack of subject matter jurisdiction, where the issue was or could have been raised in the earlier proceeding. Nevertheless, the doctrine of claim preclusion encompasses the principle of the validity of a judgment, as well as the principle of finality. The *Restatement* recognizes that giving preclusive effect to a prior judgment when the issue of subject matter jurisdiction was not litigated and when there is substantial question as to whether the court had subject matter jurisdiction, poses a "genuine dilemma." *Restatement* at § 12 comment d. To consider whether any substantial authority supports plaintiff's position here, we return to the *Restatement*'s discussion of the exceptions to the general rule that a party to a final judgment may not challenge the court's subject matter jurisdiction in a later proceeding. In doing so, we do not suggest that the *Restatement* necessarily provides a complete or entirely accurate statement of Oregon claim preclusion law, but instead rely upon it as a useful articulation of contemporary principles of claim preclusion.

Section 12 of the *Restatement*, quoted above, sets out three exceptions to the general rule, only one of which is even arguably pertinent here: that the "subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority." *Restatement* at § 12(1). The issue before us thus narrows to whether plaintiff has demonstrated that the Court of Appeals' exercise of jurisdiction in reviewing the 1995 judgment and issuing its decision in *Lincoln Loan I* was "a manifest abuse of authority." To state that proposition is to refute it. This case simply does not come within the exception to the preclusion rule described in *Restatement* § 12(1), as we elaborate below.

First, the importance of finality in litigation means that the exception to the claim preclusion rule applies in only the most limited circumstances. The *Restatement* explains the background of section 12 by noting that the "traditional doctrine" gave greater emphasis to the principle of validity, "asserting that a judgment of a court lacking subject matter jurisdiction was 'void' and forever subject to attack." *Restatement* at § 12 comment a. However, the "modern rule on conclusiveness of determinations of subject matter jurisdiction gives finality substantially greater weight than validity." *Id.*[3] Moreover, as with other aspects of claim preclusion, "[e]ven if the issue of subject matter jurisdiction has not been raised and determined, the judgment after becoming final should ordinarily be treated as wholly valid if the controversy has been litigated in any other respect." *Id.* at § 12 comment d. The exceptions to claim preclusion apply only in "very limited circumstances," *Restatement* at § 69 comment a, and are "defined in terms of conduct that usually is clearly manifested," such as "plain excess of authority." *Id.* at § 69 comment c.

Second, as described in detail above, plaintiff argues that the Court of Appeals "does not lawfully exist" because the constitutional provision that the legislature relied upon in establishing that court is invalid. Plaintiff's theory, however, is a novel and (literally) unprecedented challenge to a

---

[3] The Reporter's Note to *Restatement* § 12 cites *Stoll v. Gottlieb*, 305 US 165, 59 S Ct 134, 83 L Ed 104 (1938), discussed above, as "the leading modern case."

constitutional provision, Article VII (Amended), that was adopted almost a century ago. In the ensuing years, the legislature has referred to the people and the people have adopted nine different amendments to Article VII (Amended), each of which was based on the premise that Article VII (Amended) is a valid part of the Oregon Constitution. *See Carey v. Lincoln Loan Co.*, 203 Or App 399, 408 n 8, 125 P3d 814 (2005), *petition for review pending* (2006) (citing amendments).[4] Moreover, this court has relied on and applied Article VII (Amended), repeatedly affirming the authority that that article confers on the legislature to create courts and to define their jurisdiction. *See, e.g., State v. Harvey*, 117 Or 468, 242 P 440 (1926) (legislature had constitutional authority to create court of domestic relations); *In re Will of Pittock*, 102 Or 159, 171-72, 199 P 633, *on reh'g*, 202 P 216 (1921) (confirming circuit court jurisdiction based on statute passed pursuant to legislature's authority under Article VII (Amended)). Indeed, in discussing the legislature's authority under that article, this court stated 50 years ago that the legislature "may provide for an intermediate court of appeals." *State ex rel Madden v. Crawford*, 207 Or 76, 83, 295 P2d 174 (1956). The Governor, too, has assumed the validity of Article VII (Amended), section 1, approving legislation passed under that provision and appointing judges to courts created under that authority.

That brief review demonstrates that the voters, the legislature, this court, and the Governor all have assumed, and acted for decades on the assumption, that Article VII (Amended) became a valid part of the Oregon Constitution in 1910. Whatever the merits of plaintiff's claim that Article VII (Amended) was unconstitutionally adopted in 1910—a question that we need not, and do not, decide in this case—the discussion above demonstrates that plaintiff has failed to show that "the subject matter of the action"—here, the Court of Appeals' review of the 1995 judgment—"was so plainly

---

[4] In *Carey*, the Court of Appeals rejected a challenge to that court's jurisdiction similar to the one presented here, holding that, even if the adoption of Article VII (Amended) was originally flawed, subsequent amendments to that article conferred authority on the legislature to create new courts by statute, including the Court of Appeals. 203 Or App at 407-15.

beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority."

Our conclusion in that regard is buttressed by fact that the earlier litigation that plaintiff attacks in this case consisted not only of a proceeding before the Court of Appeals, but also of proceedings before *this* court. Even if plaintiff were correct that the Court of Appeals does not lawfully exist, plaintiff nevertheless had a statutory right to petition this court for review of the Court of Appeals decision. Plaintiff never has questioned the validity of this court, and plaintiff's present challenge to the Court of Appeals could have been raised in a petition for review. As discussed above, plaintiff did petition for review, but did not challenge the Court of Appeals' subject matter jurisdiction over the 1995 judgment. In those circumstances, the application of established claim preclusion principles to bar plaintiff's attempt to collaterally attack the prior judgment is not inequitable.

In sum, we hold that plaintiff's attempt to revisit an issue that could have been fully litigated in the Court of Appeals and in this court in the prior proceeding is simply inconsistent with well-settled principles of claim preclusion. For those reasons, we conclude that the circuit court was correct in entering judgment for defendant.

The judgment of the circuit court is affirmed.